ERNEST S. RANDOLPH, DEFENDANT IN ERROR, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued March 13, 1903—Decided June 15, 1903.

The duty of the master to inspect apparatus and appliances is a duty to exercise reasonable care only in making the inspection, and requires only the making of such tests and examinations as are reasonably practicable.

On error to the Supreme Court.

For the plaintiff in error, *Vredenburgh, Wall & Van Winkle.*

For the defendant in error, *Horace Allen* and *Warren Dixon.*

The opinion of the court was delivered by

SWAYZE, J. The plaintiff's action is brought to recover for injuries caused by the sudden stopping of a freight train upon which he was employed as a brakeman. The sudden stopping was due to the bursting of a piece of hose connecting the air brakes between the cars. The train started from Weehawken, and the accident happened about fifty miles away. The train had made four stops, at each of which the air brakes had been successfully applied. The negligence complained of was the failure of the company to make a proper inspection of the hose. It appeared that the inspector at Weehawken had made the usual inspection before the train left, except, perhaps, that he failed to handle the hose coupling between the cars. This inspection consisted in passing along the train to see that it was equipped with air brakes, and that nothing was broken; and, after the air was turned into the train line, opening the relief valves on each car to learn if the air was passing through and if each car was being charged; then opening the angle cock at the rear end and blowing the air through; then passing back to the head end of the train and having the engineer apply the air to see that the brakes were working, at the same time listening and watching for leaks to see if any hose showed signs of weakness.

We are satisfied, by the testimony of Colson, that this train was inspected in this manner before leaving Weehawken. His testimony was criticised as testimony, not of the facts of the case, but of his general custom, as required by the rules of the company; but we think such is not a fair construction of the language used by the witness. This method of inspection was the ordinary method used by the railroads having their termini in Jersey City, except that the chief car inspector of the Central railroad testified that the inspector on that railroad takes hold of the hose before he couples it. It does not appear in the case that the actual handling of the hose would

have disclosed the defect which caused the accident, and we think this difference is immaterial. The only evidence upon the part of the plaintiff that any other inspection was necessary, or that the defect in the hose could have been discovered by inspection, was the testimony of the witness Olsen, a mechanical engineer and a professional tester of materials. He admitted that he could not speak with authority as to the inspection made by railway companies. He testified that an examination would show, to a person who understood how to examine and was thoroughly familiar with the subject, whether a hose would be likely to break or not, and when asked what kind of an examination would show that, he answered, "By means of a glass [evidently meaning a magnifying glass], by means of water, by means of pressure," and his testimony indicates that the pressure to which he refers is a pressure of several hundred pounds. The ordinary train pressure is seventy pounds. The hose itself in this case was a standard hose, made by manufacturers of good repute, and was their best brand. It was made originally, in October, 1898, apparently for the Baltimore and Ohio Railroad Company. The ordinary life of a hose of this character is shown to have been from three to four years. The accident happened May 14th, 1901.

The duty of the employer is to exercise reasonable care and skill in making inspections and tests at proper intervals. *Steamship Co.* v. *Ingebregsten,* 28 *Vroom* 400; *Atz* v. *Manufacturing Co.,* 30 *Id.* 41; approved in *Baldwin* v. *Atlantic City Railroad Co.,* 35 *Id.* 232. This duty is satisfied if the master uses "such reasonable precaution as a man of ordinary prudence would use for the safety of himself and his workmen under the circumstances." The master is not bound to exercise extraordinary care or the highest diligence. We think this duty is satisfied if the master exercises the same care that is ordinarily exercised, and that one engaged in practical operations is not bound to make either the inspections or the tests which may be possible in a laboratory or upon a small scale and outside of the practical conduct of affairs. The evidence leads us to the conclusion that

the ordinary and reasonable inspection did not require the examination with a glass, or by means of water, suggested by Olsen, nor do we think that it required that the hose be subjected to the extraordinary pressure which he suggested. It is only when the hose appears doubtful that the test of extraordinary pressure is applied in actual practice. Olsen examined the hose at the trial with a glass which magnified three or four hundred times, and discovered cracks in the outer coating of the hose, which indicated to him that the hose had become of so doubtful a character that it ought to have been further tested by subjecting it to great pressure; but there is no proof that the ordinary practice of railroads requires the use of a magnifying glass to discover cracks in the hose. Such a test seems to us too stringent to expect in actual practice. This hose was subjected to the highest pressure expected to be applied to it in ordinary use, and no better practical test is suggested than the actual application of the train pressure to the hose. It would be manifestly impracticable, on each occasion, to subject the hose to the test suggested by Olsen as likely to lead to the discovery of the particular defect existing in this hose. Moreover, the accident to the hose which happened in this case was one which was liable to happen unexpectedly, and to guard against such accidents it was the duty of the trainmen themselves, of whom the plaintiff was one, to make inspections as often as possible during the trip. For the purpose of replacing hose which might become defective during the trip, extra pieces were supplied and kept in the caboose at the end of the train. If the defect was discoverable by reasonable inspection with the naked eye, then the trainmen ought to have discovered it at one of the several stops before the accident, and to have replaced the hose with one of the extra pieces from the caboose. The failure to do so was the negligence of a fellow-servant, for which the defendant is not responsible to the plaintiff. If, however, the defect was not discoverable by reasonable inspection with the naked eye, then there is a failure to establish negligence in the inspector at Weehawken. In either view, the plaintiff cannot recover.

The judgment is reversed, and the record must be remitted for a new trial.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VOORHEES, VROOM.    13.