## SHANDREW v. CHICAGO, ST. P., M. & O. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. November 13, 1905.)

No. 2,171.

1. WRIT OF ERROR—QUESTIONS REVIEWABLE—SUFFICIENCY OF OBJECTION TO TESTIMONY.

A general objection to a question asked a witness as "immaterial, incompetent, and irrelevant" is insufficient to sustain an assignment of error.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, §§ 194–199.]

2. MASTER AND SERVANT—ACTION FOR INJURY OF BRAKEMAN—INSTRUCTIONS.

On a trial of an action against a railroad company to recover for the death of a brakeman, alleged to have been caused by the bursting of a defective air brake hose on a freight train, an instruction was correct which stated that defendant was not liable, unless it failed to exercise ordinary care to provide a proper and fit hose and to keep it in good condition, and that the fact that the hose did burst by reason of its defective condition was not of itself sufficient evidence of defendant's negligence.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 881, 898, 955.]

3. SAME—INSPECTION AND TESTING OF AIR BRAKE HOSE.

The court instructed the jury that for the discovery of defects in the air brake hose defendant was not required to adopt or apply any extraordinary inspection or tests which, were not approved, practical, and customary, but fulfilled its duty if it adopted such tests and inspection as were ordinarily adopted and applied and regarded as sufficient by prudently conducted railway companies in like circumstances; also that, even if defendant failed to inspect or test the hose, proof of such failure was not sufficient evidence of negligence, unless it was also found from the evidence that the adoption and application of such tests and inspection as were ordinarily adopted and applied by prudently conducted railway companies in like circumstances would have disclosed the defective condition which caused the hose to burst. *Held*, that such instructions were correct, as merely stating in amplified form the rule of ordinary care.

4. SAME.

An instruction that "defendant cannot be held liable in this case merely because of the fact that the hose which burst was a spliced hose" was correct, especially where it was shown by the evidence that the splicing of the hose does not weaken it.

5. SAME.

In view of testimony showing without contradiction that it was not customary for other railroad companies to test air brake hose by subjecting it to a pressure in excess of that to which it was subjected in use, it was not error to charge that defendant was not negligent because of its failure to apply such test.

In Error to the Circuit Court of the United States for the District of Minnesota.

This suit was instituted by the plaintiff in error, hereinafter called plaintiff, against the defendant railroad company to recover damages for the negligent operation of its railway resulting in the death of plaintiff's intestate. The specification of negligence found in the complaint is that defendant's servants, agents, and employés in charge of one of its freight trains suddenly and violently stopped the train while plaintiff's intestate, engaged in the discharge of his duty, was on the top of a car, and thereby precipitated him to the ground, and so injured him that he subsequently died. Descending to particulars, plaintiff alleges that the air brake hose with which the train was equipped was old, insufficient, and rotten to such a degree that it burst, and

thereby suddenly set the air brakes, which caused the sudden and violent stopping of the train, and that although the defendant knew, or by reasonable observation and inspection might have known, the insufficient character of the air hose, it permitted the same to become old, weak and rotten, and insufficient for the purpose for which it was intended. The defense consisted of a denial of the alleged negligence and a plea of contributory negligence. The trial was to a jury, and resulted in a verdict and judgment in favor of the defendant. Plaintiff brings the case here by writ of error.

Christopher D. O'Brien (Richard D. O'Brien, on the brief), for plaintiff in error.

Thomas B. Wilson (James B. Sheean, on the brief), for defendant in error.

Before VAN DEVANTER, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

There are three assignments of error predicated on admission of evidence over plaintiff's objections. Plaintiff's counsel states his objections to the questions as follows: (1) "I object to this as immaterial." (2) "I object to this as immaterial, incompetent, and irrelevant." (3) "I object to that as immaterial, incompetent, and irrelevant." These objections are generally insufficient upon which to predicate reviewable error. They fail to direct attention of the trial court to the objectionable feature complained of. Such general objections are frequently made at the inception of a trial, before the court is entirely familiar with the issues of a case, and when, of all times, it has a right to expect aid and assistance from counsel. To object to a question because it is "immaterial" or "irrelevant," without specifying why or in what particular, imposes the burdensome duty upon the court to immediately and carefully scrutinize the pleadings, with a view of ascertaining therefrom whether under any conceivable theory the proposed evidence would be material or relevant; a duty which, from the nature of things, the court can, at the outset of a trial, with difficulty perform. Counsel, on the contrary, from their familiarity with the case, not only understand the issues, but doubtless understand the immediate or remote bearing of any kind of evidence, and can readily advise the court why or in what respect a given question is immaterial or irrelevant. These observations apply with equal or greater force to an objection on the ground of incompetency. A witness may be incompetent as such, or the oral evidence of a fact, when some writing exists, may be incompetent evidence. Which of these, or many others that might be specified, is it? This can readily be answered by counsel. If he makes an objection, either on the ground of immateriality or incompetency, he knows his reasons for so doing, and must, unless it appears from the connection that the question is obviously or clearly inadmissible, state them, if he desires to claim error by reason of the court's action. The reasons for this rule may also be put on broader grounds. Counsel are officers of the court in quite the same sense as the judge is. Both are engaged in the serious work of administering justice. They should, therefore, work

142 F.—21

together to that end. Candor and freedom from reserve or disguise should equally characterize their conduct.

This court at an early day had occasion to characterize the words "irrelevant, immaterial, and incompetent," commonly employed in connection with an objection to a question, as a "meaningless formula." It expressly ruled that a failure to state why a question was "incompetent" invalidated any exception saved to its admission. Minchen v. Hart, 72 Fed. 294, 18 C. C. A. 570. And at a later day this court held, citing many authorities, that an objection to a question that it was "immaterial," without more, was tantamount to no objection at all. Eli Mining & Land Co. v. Carleton, 108 Fed. 24, 47 C. C. A. 166. At this term, in the case of Davidson Steamship Co. v. United States of America, 142 Fed. 315, this court took occasion to say as follows:

"It has been held by this court many times that a trial court is justified in overruling an objection to a question or to evidence sought to be elicited thereby, when no ground is specified or when the ground mentioned is so general in form as to be insufficient to direct attention to the particular defect or objectionable feature ruled on."

The cases of Sparf & Hansen v. United States, 156 U. S. 51, 15 Sup. Ct. 273, 39 L. Ed. 343, Burlington Ins. Co. v. Miller, 60 Fed. 254, 8 C. C. A. 612, Missouri Pac. Ry. Co. v. Hall, 66 Fed. 868, 14 C. C. A. 153, and Guarantee Co. v. Phenix Ins. Co. 59 C. C. A. 376, 124 Fed. 170, modify the general rule fully as far as the interests of justice demand. They appropriately recognize this rule, but hold that, when the reasons for ruling a given question immaterial or incompetent are obviously and clearly discernible, the general objection will be sufficient to require a ruling, and may be the basis of reviewable error. For the reason that the immateriality or incompetency of the questions complained of by plaintiff in error are not obviously or clearly discernible, we feel constrained to decline to consider the assignments of error predicated on general objections like those stated.

An exception was duly taken and preserved to the following portion of the court's charge:

"The mere fact that the hose did burst by reason of a defective condition is not of itself sufficient evidence that the defendant was negligent."

This portion of the charge is found in connection with and as a concluding part of the following:

"The defendant was not an insurer of the sufficiency or fitness of the air brake hose in question. It was only bound to exercise ordinary care to provide a sufficient and fit hose, and if it did use ordinary care it is not liable."

This case was apparently tried below on an issue that one of the acts of negligence charged against the defendant was that it failed to discharge its duty to properly inspect the hose in question, and that by reason of this failure the hose burst, proximately causing the death of plaintiff's intestate. It is doubtful if the pleadings warranted the trial of any such issue. But as the trial proceeded as if such an issue was joined, and as that is the theory of the argument before us, we shall, for the purpose of our decision, treat the case as if tried on that issue with others as stated in the complaint. The particular portion of the charge to which the exception now under

consideration was taken is practically a statement that the fact that the accident happened is not sufficient proof of negligence. It is settled law that, as between a master and his servant, the maxim "res ipsa loquitur" has no application. Union Pacific R. Co. v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756, 38 L. Ed. 597; Texas & Pacific Railway Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136; Patton v. Texas & Pacific Railway Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; Peirce v. Kile, 80 Fed. 865, 26 C. C. A. 201. In the Barrett Case, supra, the Supreme Court had before it a case on the pleadings, facts, and procedure much like that now before us. The action in that case was to recover for personal injuries alleged to have been sustained by Barrett by reason of a weak and unsafe condition of stay bolts in a boiler, which resulted in an explosion. In that case the trial court gave the jury the following instruction:

"The master is not the insurer of the safety of its engines, but is required to exercise only ordinary care to keep such engines in good repair, and if he has used such ordinary care he is not liable for any injury resulting to the servant from a defect therein not discoverable by such ordinary care. The mere fact that an injury is received by a servant in consequence of an explosion will not entitle him to a recovery; but he must, besides the fact of the explosion, show that it resulted from the failure of the master to exercise ordinary care either in selecting such engine or in keeping it in reasonably safe repair."

This instruction, with others not necessary now to mention, was approved by the Supreme Court, saying:

"We think that these instructions laid down the applicable rules with sufficient accuracy in substantial conformity with the views of this court as expressed in Hough v. Railway Co., 100 U. S. 213, 25 L. Ed. 612," and other cases there cited.

It thus appears that the Supreme Court in that case justified an instruction substantially like that complained of in this. It follows that there was no error in giving this.

In the next two assignments of error it is contended that the trial court erred in giving the following instructions to the jury:

"(1) For the discovery of defects in the air brake hose the defendant was not required to adopt or apply any extraordinary inspection or tests, which are not approved, practical, and customary; but it fulfilled its duty if it adopted such tests and inspection as are ordinarily adopted and applied and regarded as sufficient by prudently conducted railway companies in like circumstances. (2) Even if the defendant failed in any manner to inspect or test the air brake hose in question, such failure was not necessarily negligence, and proof of such failure is not sufficient evidence of negligence, unless you are also satisfied by the evidence that the adoption and application of such tests and inspection as are ordinarily adopted and applied by prudently conducted railway companies in like circumstances would disclose the defective condition thereof which caused the bursting of the hose."

These two instructions were requested by defendant's counsel, doubtless, because the court had in its general charge already said to the jury that the question for them to determine was "whether there was the proper care used in the inspection of this piece of hose." We perceive no error in these instructions. They state propositions of law abundantly supported by reason and authority. The court had in the main charge told the jury that ordinary care was the test of de-

fendant's liability and had properly defined ordinary care to be "that care which an intelligent, prudent person engaged in that kind of business ordinarily exercises with respect to it." Union Pac. R. Co. v. Daniels, 152 U. S. 684, 691, 14 Sup. Ct. 756, 38 L. Ed. 597; Washington, etc., R. Co. v. McDade, 135 U. S. 554, 569, 10 Sup. Ct. 1044, 34 L. Ed. 235; Choctaw, etc., R. R. Co. v. McDade, 191 U. S. 64, 67, 24 Sup. Ct. 24, 48 L. Ed. 96; Charnock v. Texas & Pac. R. Co., 194 U. S. 432, 437, 24 Sup. Ct. 671, 48 L. Ed. 1057; Southern Pac. Co. v. Hetzer, 135 Fed. 272, 283, 68 C. C. A. 26.

The two instructions complained of are but amplifications of this general definition of ordinary care. They say to the jury that the defendant was not required to adopt or apply any extraordinary inspection, or tests which are not approved, practical, and customary. In so saying the court has only given the converse of the proposition involved in its definition of ordinary care. It states that the law did not require the defendant to use extraordinary care. The first instruction complained of then proceeds:

"But it [the defendant] fulfilled its duty if it adopted such tests and inspection as are ordinarily adopted and applied and regarded as sufficient by prudently conducted railway companies in like circumstances."

What is this but a concrete application of the general definition of ordinary care? Manifestly, what other prudently conducted railroad companies ordinarily did in respect to tests and inspection in like circumstances as those which surrounded the defendant is the accurate test of the ordinary care which was required of the defendant in this case. An instruction in the same phraseology, and which, doubtless, inspired the one now before us, is found in the case of Texas & Pacific Railway Co. v. Barrett, supra. The jury in that case was told:

"That a railway company is not required to adopt extraordinary tests for discovering defects in machinery, which are not approved, practicable, and customary; but that it fulfilled its duty in this regard if it adopts such tests as are ordinarily in use by prudently conducted roads engaged in like business and surrounded by like circumstances."

That instruction was approved by the Supreme Court as a correct exposition of the law applicable to a case quite similar in its facts to the one now under consideration.

Much that has already been said is applicable to the second instruction above quoted. It calls the jury's attention to the same test as is involved in the first instruction. It advises them that before they can find for the plaintiff they must be satisfied that the adoption and application of such tests and inspection as are ordinarily adopted and applied by prudently conducted railway companies in like circumstances would disclose the defective condition which caused the bursting of the hose. This is a different way of putting the proposition already stated in the instruction first given, and for the reasons stated is not erroneous.

Counsel for plaintiff earnestly urge upon our attention that these two instructions set up the conduct and management of other railroad companies as the ultimate criterion of the care which the defendant company was required to exercise. This is not correct. What other

railroad companies did is not in itself a standard of care for the defendant, but is evidence only of that standard. It is evidence which the jury may consider under proper instructions in determining whether this defendant exercised ordinary care; that is, such care as other prudent persons engaged in the same business ordinarily exercised. The Supreme Court of the United States well expressed this thought in the case of Texas & Pacific Railway Co. v. Behymer, 189 U. S. 468, 23 Sup. Ct. 622, 47 L. Ed. 905, wherein it says:

"What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."

From these observations it appears that the proof of what other railroads did under similar circumstances was properly treated in these instructions as evidence only of the standard of that ordinary care, which the law required the defendant to observe.

It is next contended that the trial court erred in giving the following instruction to the jury at the instance of defendant's counsel:

"It is a rule of law that railway companies have and must exercise much judgment and discretion in determining the kind and character of the appliances which they adopt, and there is a large field where their decision of doubtful questions in the affirmative or negative cannot be held to disclose any want of ordinary care; therefore, *the defendant cannot be held liable in this case merely because of the fact that the hose which burst was a spliced hose.*"

The unitalicized portion of this instruction undoubtedly expresses a correct general rule. It was so declared by this court in Gilbert v. Burlington C. R. & N. Ry. Co., 128 Fed. 529, 531, 63 C. C. A. 27. The concluding or italicized portion of the instruction is a necessary corollary from the premise first stated. A spliced hose, so called, may be the best and safest. At any rate, in the exercise of the permissible judgment and discretion allowed the officers of a railroad company, it may be reasonably considered best and safest. But as to this we are not left to conjecture or implication. There is ample evidence tending to show that spliced hose is equally as strong as new hose, that splicing does not weaken it, that it was commonly used on railroad cars of different companies which found their way into defendant's yards, that it was received generally on interchange of cars, that its use was not economical, but more expensive than new hose. In the light of such evidence as this is was not erroneous to instruct the jury "that defendant company could not be held liable merely because of the fact that the hose which burst was a spliced hose."

It is next contended that the court erred in the following portion of its charge to the jury:

"Under the evidence in this case I charge you that the defendant cannot be held negligent because of its failure to apply to the hose in question the test of air pressure greatly in excess of that to which it was ordinarily subjected in the use thereof. There is no doubt about that. Ordinary care requires such care as is ordinarily used by a prudent person under the circumstances; and you have the evidence in the case of persons connected with this company and many others, the Northern Pacific, the Great Northern, the Milwaukee & St. Paul, and many others, as to the amount of pressure which is used. It is

very evident, also, that it might not be the exercise of proper care to use very much greater pressure in testing hose, because, while it might stand the greater pressure at the time, the use of such greater pressure might tend to weaken the hose and render it more liable to burst, or might weaken it so that it would be more liable to receive other injuries, and more liable to burst in the future. In the absence of evidence that it is usual or customary, or regarded by prudent railroad men as essential, that this hose should be subjected in testing it to a much greater pressure, it would not be the exercise of such ordinary care to subject it to such greater pressure."

It is again argued by plaintiff's counsel that the court, in this portion of its charge, erects out of other companies' conduct a standard of care for this defendant. This objection, for reasons already stated, is without merit. The reference to what other railroads did is found in immediate context with the frequently repeated and correct definition of ordinary care. In the charge complained of the court calls attention to the evidence showing what different railroads did with respect to the application of pressure as a test. The evidence discloses, without contradiction, that no railroads applied what is called the reservoir pressure in advance of making use of the air brake hose. Witnesses of much experience in railroad business testified that they never heard of any company contriving a locomotive so as to make a test of air brake hose by giving it any more than the pressure which is usually applied in the use of a hose, and that they knew of no railroad company which used any greater pressure than the train line pressure for the purpose of inspecting the air brake hose. The evidence is all one way that railroads generally subjected their air brake hose only to the test of outward inspection, looking for escaping air and bruises. It is in the light of uncontradicted testimony such as this that the court told the jury that, under the evidence, the defendant cannot be held negligent because of its failure to apply to the hose a test of air pressure greatly in excess of that to which it was ordinarily subjected in its use. The reasons given by the learned trial judge why it might not be the exercise of reasonable care to use such greater pressure in making a test are probably sound, but whether so or not they do not affect the general rule stated by the court as applicable to the case under the testimony. The portion of the charge now under consideration is only a different way of expressing the principle declared in the first instruction complained of by plaintiff's counsel, wherein the court told the jury that:

"For the discovery of defects in the air brake hose the defendant was not required to adopt or apply any extraordinary inspection or tests which are not approved, practical and customary, but it fulfilled its duty if it adopted such tests and inspection as are ordinarily adopted and applied and regarded as sufficient by prudently conducted railway companies in like circumstances."

As already observed, this last quoted instruction has received the approval of the Supreme Court of the United States, and we fail to find anything in the portion of the charge excepted to now under consideration, which is inconsistent with the one so approved. This court had occasion in the case of Northern Pac. R. Co. v. Blake, 63 Fed. 45, 11 C. C. A. 93, to speak on the subject involved in our present inquiry. It there says:

"The generally accepted doctrine is that a railway company is not bound to use upon all of the cars in its possession the safest possible coupling appliances, or appliances of the latest and most improved pattern. It is at liberty to use such coupling appliances as are in use at the time by other well managed roads, and such as are regarded by competent railroad men as ordinarily safe and fit to be used."

This court approved that doctrine in the case of Chicago, R. I. & P. Ry. Co. v. Linney, 59 Fed. 45, 7 C. C. A. 656, wherein it approved of a charge given by the trial judge in the following language:

"A railroad company is not bound to see that the coupling appliances in use upon all of its own cars, or the cars in its possession received from other roads, are the safest possible appliances, or of the latest and most improved pattern. It may use such coupling appliances as are in use at the time by other railroads, and such as are regarded by prudent railroad men as ordinarily safe and fit to be used, even though such appliances are not of the latest and most improved pattern."

This same thought is also expressed by the Supreme Court of the United States in Texas Pacific Railway Co. v. Barrett, supra, wherein it is said that a railroad company "is not bound to insure the absolute safety thereof [meaning machinery and appliances], nor to supply the best and safest and newest of such mechanical appliances, but is bound to use all reasonable care and prudence in providing machinery reasonably safe and suitable for use and in keeping the same in repair."

Certain features of this case are made the basis of an earnest argument by counsel for the plaintiff. Attention is called to some of the facts disclosed by the record as follows: That the only test of the air brake hose applied by defendant and other railroad companies besides the ordinary train pressure of 70 pounds was the external inspection, which disclosed only whether air leaked through the hose or its joints or whether there were any visible bruises or defects in the hose; that such external inspection would not disclose the defects in the inner stratum of the hose; that the general practice of all railroad companies was to use such hose until it burst; and that defendant conformed to such general practice in the case now under consideration. From these facts an ingenious argument is constructed to the effect that no sufficient pressure test was made in this case, and that defendant was, therefore, liable for damages sustained by plaintiff's intestate. This argument involves the necessity referred to by the learned trial judge of requiring a railroad to subject its hose to a pressure, by way of preliminary test, above the 70 pounds to the square inch required in daily use, which might weaken or strain it and thus render it less able to endure the pressure of ordinary use. Moreover, this argument ignores other evidence found in the record, like this:

"I know of no way by which the frailty of that hose could be discovered, except by such pressure as would burst it. * * * There are no means of inspecting our air brake hose so as to ascertain whether it will burst under ordinary pressure," etc.

Assuming that this evidence is correct, or at least that it tends to show the truth, which, for the present purpose, must be assumed, it follows that the logical sequence of applying the test of extraordinary pres-

sure urged by plaintiff's counsel is that railroads must, in all cases, before coupling up their cars with the air brake hose, subject it to a destructive pressure, that is, one which, according to some of the evidence, would cause it to burst. This of course is not sound. It suggests an impracticable and ruinous test. The whole argument discloses the inherent difficulty involved in a departure from well-established rules in the trial of actions at law.

The case of Randolph v. New York Central & H. R. R. Co., decided by the Court of Errors and Appeals of New Jersey, and reported in 55 Atl. 240, is a case similar in its main facts to that now before us. In that case is was urged that some magnifying glass, water arrangement, or extraordinary pressure over and above the ordinary train pressure of 70 pounds should be resorted to as a preliminary test. The court in dealing with the subject says:

"The duty of the employer is to exercise reasonable care and skill in making inspections and tests at proper intervals. * * * We think this duty is satisfied if the master exercises the same care that is ordinarily exercised in the same matter and that one engaged in practical operations is not bound to make either the inspections or the tests which may be possible in a laboratory or upon a small scale and outside of the practical conduct of affairs. The evidence leads us to the conclusion that the ordinary and reasonable inspection * * * did not require that the hose be subjected to the extraordinary pressure suggested. * * * Such a test seems to us too stringent to expect in actual practice. * * * This hose was subjected to the highest pressure expected to be applied to it in ordinary use and no better practical test is suggested than the actual application of the train pressure to the hose. It would be manifestly impracticable on each occasion to subject the hose to the test suggested."

We cannot perceive how the trial court could have instructed the jury very differently than it did, without having told them to find for the plaintiff. Such an instruction, under the undisputed facts of this case, would have been erroneous. The court not only laid down, but frequently referred, in its charge, to the general rule of care applicable to the case. It explained to the jury the proper bearing of the evidence relating to the customary way of testing hose by other railroad companies, and in every way, so far as we can perceive, kept well within established rules. Under these general instructions the jury was bound to consider all the evidence and to determine therefrom whether the external test applied by defendant and other railroad companies, evidenced the requisite ordinary care, or whether under defendant's obligation to use ordinary care it was its duty to have subjected its hose to some extraordinary pressure above that required in daily use.

We think the charge as a whole fairly presented these controlling issues to the jury and that the portions excepted to, when considered with the balance of the charge, are free from error. The judgment is accordingly affirmed.