REED v. NORFOLK & W. RY. CO.

(Circuit Court, S. D. West Virginia. November 19, 1907.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—RAILROADS—NEGLIGENCE.

A train containing three flat cars loaded with steel rails arrived in defendant's yard at 3 o'clock a. m., and at 11 o'clock plaintiff, a member of a yard crew, was directed to detach the cars from the train, and remove them to another part of the yard. One of the cars was equipped with a drop brake, which, when plaintiff attempted to use it, was standing up not in its proper position, and, on plaintiff's taking hold of the handle to release the brakes on the car, the brake stem suddenly slipped down, throwing plaintiff from the end of the car and injuring him. After the accident, the brake was inspected and shown to be in proper working order. *Held,* that such facts, in the absence of evidence that the car was properly inspected between the time it arrived in the yard and the time plaintiff was injured, were sufficient to establish a prima facie case of defendant's negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 215.]

2. SAME—CONTRIBUTORY NEGLIGENCE.

Plaintiff, never having used a brake of that character before and having seen very few of them, was not negligent in attempting to use it without examination when he found it in an upright unnatural position.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 694.]

3. SAME—INSPECTION—BURDEN OF PROOF.

Where plaintiff, a brakeman, was injured while using a drop brake on a flat car with which he was unfamiliar, which was standing in an unnatural position at the time he attempted to use it, and plaintiff's evidence indicated that the car had been standing as part of the train in defendant's yards from 3 o'clock a. m. until 11 o'clock a. m., when the accident occurred, the burden was on defendant to show a proper and reasonable inspection of the car within such period, or that the train had been moved or the brake used after inspection by plaintiff's fellow servants.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 898, 902.]

4. SAME—CHARACTER OF INSPECTION.

The duty of inspection is an unassignable duty of the master, so that, no matter by whom it is performed, the inspection must be as reasonably thorough and careful as though performed by the master in person.

5. SAME—INSTRUCTIONS.

Where plaintiff, a brakeman, was injured by a drop brake in an improper position, an instruction that, while it was defendant's duty to provide reasonably safe cars and brakes, still, if the brake in question was out of repair, plaintiff could not recover unless defendant knew of the condition of the brake and failed to remedy the same or notify plaintiff thereof or had an opportunity to inspect and failed to do so, was misleading as authorizing a verdict for defendant, if an inspection without reference to its character was in fact made.

6. SAME—RES IPSA LOQUITUR—CIRCUMSTANTIAL EVIDENCE.

The maxim, "res ipsa loquitur" has no application to a case between master and servant, but this rule does not prevent the establishment of a master's negligence in an action for injuries to a servant by the circumstances surrounding the accident.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 881, 898.

Application of doctrine of res ipsa loquitur in actions for injuries to servants, see note to Carnegie Steele Co. v. Byers, 82 C. C. A. 121.]

Trespass on the Case. Upon motion for new trial.

Rummell & Higginbotham, J. H. Gaines, and Staige Davis, for plaintiff.

Jos. I. Doran, Theodore W. Reath, and Holt & Duncan, for defendant.

KELLER, District Judge. The accident on account of which this suit was brought occurred on the yards of the defendant company at Bluefield, W. Va., on October 6, 1905, about 11 o'clock a. m. The plaintiff, a brakeman of some seven years' experience, was a member of a yard crew, and on the morning of the accident this crew had received orders to detach from a freight train which had arrived at Bluefield from Roanoke, Va., at about 3 o'clock a. m. that morning, three flat cars loaded with steel rails, and remove them to the east end of the yard, there to be unloaded. The rails protruded so far beyond the east end of the easternmost car that it was impracticable to couple the yard engine to said car, and, in consequence, an attempt was made by the crew to roll the three cars by gravity down the track far enough to permit the engine to be brought in rear of them. The crew consisted of E. H. Johnson, the conductor, who boarded the easternmost car, the plaintiff, who boarded the middle car, and one Compton, another brakeman (deceased at the time of trial), who boarded the westernmost of the three cars. The middle car was a flat car belonging to the Georgia Southern and Florida Railroad Company, and was equipped with what is known as a "drop" brake; that is to say, the brake stem, when not held up by the brakeman for the purpose of putting on or taking off the brake, would normally drop down under the car until the handle (an ordinary cross-bar forming with the brake staff a figure something like the letter "T") would rest upon the floor of the car. The other two cars were ordinary flat cars of the Norfolk & Western Ry. Co. equipped with stationary brakes. The uncontroverted testimony of the plaintiff upon the trial showed that, though he had been a brakeman for the time mentioned, he had never used a brake of this character before, and had seen very few of what are known as "drop" brakes. A witness from the Georgia Southern & Florida Railroad testified that this type of brake is quite common on flat cars in the south, being largely used in connection with the lumber industry; and that latterly many of these brakes are made so that the brake stem can be kept elevated, when desired, by means of what is known as a "cotter key" inserted through the stem. The uncontroverted testimony of the plaintiff further showed that, when he boarded this car, the brake was set, and that the brake stem was standing up (thus being in an abnormal position for that type of brake when not being handled); that upon his taking hold of the brake handle, in order to release the brakes, the brake stem suddenly gave way—that is, slipped down—and he was precipitated from the rear end of the car upon the track and in front of the following loaded car (all of the three cars being slowly moving at the time), and was thus injured, resulting in the loss of one leg and other injuries. The declaration, in substance, charged that the defendant was negli-

gent, in that it failed to furnish plaintiff a safe brake with which to work; that the same was improperly constructed, out of repair and dangerous, and, being an unusual appliance, unlike the brakes on defendant's cars, acted as a trap and thus occasioned the plaintiff's injuries. The defendant demurred to the declaration, which demurrer was overruled, and, issue being joined upon defendant's plea of "not guilty," the evidence was introduced, and at the conclusion of all the evidence the defendant moved the court for a peremptory instruction to the jury to find for the defendant, which motion being overruled the jury found for the plaintiff a verdict in the sum of $10,000, and answered certain special interrogatories, propounded by the defendant, in accordance with its general finding. The matter is now before me on a motion to set aside this verdict, and to grant to the defendant a new trial.

This case has been ably argued, both orally and by written and printed briefs, and I desire to express to counsel on both sides my appreciation of the care and labor bestowed upon what I conceive to be a remarkably difficult question. It is undoubtedly true that the general rule governing the proof requisite in the case of servants injured by defects in machinery or appliances requires that the plaintiff prove, not only the defect, but that the master either knew of it, or that it had existed for a sufficient length of time to warrant the fair presumption that he should have known of it. In this case we have a curious situation. Under the proof at the trial, there was no defect in this brake. It was carefully inspected immediately after the accident by two competent inspectors, who separately manipulated the brake, and each time, upon releasing it, it responded to the law of gravity, and dropped to its proper position, thus showing that it was in proper working order. On the other hand, we have the equally positive proof that at the time the plaintiff attempted to use this brake, a few minutes before this inspection, it was standing upright, out of its normal position, and presenting a trap which undoubtedly caused the injury to the plaintiff, and there can be no question (to my mind) of contributory negligence on the part of the plaintiff. This fact of the abnormal position of the brake stem being established, let us see whether it is not a warrantable inference to be drawn therefrom that this abnormal position had continued since the last time the brake was manipulated. The position was exactly contrary to the law of gravity, and therefore could not have occurred of itself, or by the motion of the car in being transported from place to place, and therefore may, as I believe, be fairly inferred as having existed since the brake was last set. The train came in as a whole about 3 o'clock a. m., and, according to the testimony of defendant, was inspected between that hour and 6 o'clock a. m. The evidence as to that inspection was before the jury, and I may here say that, had that inspection been of the character of the subsequent inspection, I should have had no hesitation in directing a verdict for the defendant. Had the inspectors, or either of them, been able to assert that the brake on this car was then in normal position, clearly no liability could have attached to the company because of the accident some hours later.

But the evidence as to the character of that inspection was before the jury, and the jury found upon a special interrogatory that the inspection thus and then given was not a proper or sufficient one as a matter of fact. This inspection was made by Messrs. D. D. Tynes and J. B. Carter, who inspected cars arriving from the east at night, and who testified that between the hours of 6 p. m. on October 5, 1905, and 6 a. m. on October 6th, they inspected between 500 and 600 cars, and that the method of inspection was for one man to walk on each side of a train with a torch in his hand. The jury found, and I cannot say they were not justified in finding, that an inspection so made, at night and with such a number of cars to inspect, was not a proper and reasonable inspection. Had the jury answered this special interrogatory otherwise, it would have been as much my duty to direct a verdict for the defendant as it would had the inspectors been able to testify that, at the time of this inspection, the brake was in good condition and normal position.

Of course, the evidence and the special finding of the jury still leaves open one question, namely: Was the train moved, or the brake handled, after the inspection and before the accident? Was it the duty of the plaintiff to throw light upon this question, or is it the duty of the defendant? In the first place, is there any fair inference that the train was moved or touched? It arrived at 3 a. m. October 6, 1905. At 11 a. m. this crew was sent to detach three cars from it, and shift them to the east end of the yard to be unloaded. These cars were undoubtedly found with brakes set, attached to the train that came in at 3 a. m., and there is nothing by way of inference to show that they had been moved or handled, and, if they were so handled, the knowledge of the fact (which would be by way of defense to the defendant) was much more likely to be within the knowledge of the defendant than of the plaintiff. Besides, if any burden rested on the plaintiff as to this question, it would have been to prove a negative, namely, that the car had not been touched, and I do not think the law properly lays that upon him. The main question, as it seems to me, to be determined in this case, is whether the facts attending the injury, as proved in the case, make a prima facie case of negligence against the defendant, and I am frank to say that, under the peculiar circumstances shown here, I am strongly inclined to think they do.

We can, I think, as I have before stated, eliminate from the case any possible question as to contributory negligence; and I also think we can eliminate any question as to the ordinary risks assumed by a railroad brakeman. This situation, as it presented itself at the time of the accident, presented what may be well styled a "trap" to the brakeman; and, in the light of what occurred, and of what was disclosed by the subsequent inspection of the brake, it can fairly be said that the abnormal position of the brake was due to the negligence of some person other than the plaintiff, and that such negligence was the proximate cause of his injury. That such condition had existed since the last time of handling the brake was, I think, not only a fair, but an irresistible inference; and, having thus established that this

162 F.—48

abnormal and dangerous condition existed appreciably prior to the time of the accident, and that it could only have been caused by some personal negligence, it seems to me that the burden shifted to the defendant to show that such condition was not attributable to any negligence with which it was properly chargeable. This it sought to meet by proving an inspection within a proper and reasonable time. I have already stated that had that inspection been as thorough as the one made immediately subsequent to the injury, or had the jury found that the inspection was a proper and sufficient—or, in other words, reasonable inspection—the burden thus shifted would have been successfully met, or had the defendant shown that the train had been moved, or the brake used, after the inspection, by the fellow servants of the plaintiff, no recovery could have been had. But it is surely and clearly the law that the duty of inspection is one of the unassignable duties of the master, and, no matter by whom it is performed, the inspection must be as reasonably thorough and careful as though performed by the master in person; and, to relieve from responsibility, it is not enough to show that an inspection was made within a reasonable time, but the character of the inspection must be such as to show that it was a reasonably thorough one under the circumstances of the case. It was upon this view of the law that I declined to give the "second" special instruction asked for by the defendant, which reads as follows:

"The court further instructs the jury that, while it was the duty of the defendant to provide cars and brakes reasonably safe for the plaintiff to work with and upon, still that if the brake complained of was upon a foreign car recently brought upon the line of the defendant, and was improperly constructed, or out of repair, and, as a result of such improper construction or lack of repair, the plaintiff received the injury complained of, the plaintiff cannot, notwithstanding these facts, recover, unless they further find that the defendant either knew of the condition of the brake and failed to remedy the same, or notify the plaintiff thereof, or had an opportunity to inspect the same, and failed to do so."

The vice of this instruction lies in the fact that it is misleading to the jury, so that they would necessarily have to find that, if an inspection was made, the defendant was relieved from liability regardless of the view of the jury as to the character of the inspection as disclosed by the evidence. I feel quite sure that so much of this instruction as was proper was fairly embodied in my general charge. In this case I have only held that I do not consider that the plaintiff, in view of the character of the night inspection of this car and the jury's finding in regard thereto, was bound, as a part of his case, to prove that no one had tampered with the brake between the time of such inspection and the time of the injury. The car was constructively in the custody of the master, and not of this servant. The car when used by this servant was found with brakes set and attached to and still a part of the train that had come into the yard at 3 o'clock a. m., and there was absolutely nothing in the case to indicate that it had been handled or moved since its inspection, and hence nothing to indicate that this brake staff could have got into its abnormal position by being handled after that inspection, and I must hold that it

was no part of plaintiff's duty to affirmatively show that this car, in the custody of defendant, had not been handled since said inspection, in order to make out his prima facie case.

Some courts have gone much further than this. In Crawford v. United Railways & Electric Company of Baltimore, 101 Md. 402, 61 Atl. 287, 70 L. R. A. 489, it was held that:

"A system for inspection of the implements furnished for the use of employes cannot be regarded as adequate which does not provide for safe custody of the thing inspected during any substantial interval between its inspection and its use."

In this case the injury was occasioned by the giving way of a handhold on a summer car on its first trip in the morning, by reason of which a conductor was injured. This car had finished its last trip at 1 a. m. the previous night, and for lack of room in the car barn was allowed to stand in the street outside of the barn until it went out again in the morning. At 2:30 a. m. it was inspected by an inspector, who testified that he took hold of each handhold on this car with both hands, and swung his full weight thereon, and was prepared to say that there was no crack in that handle that night. The accident occurred on the first trip of the car which left the barn at 6 o'clock a. m. There was no evidence as to how the defect to the handhold occurred. It is to be remembered, as pointed out in the opinion in this Maryland case, that it is decided with full knowledge and appreciation of the fact that it was and is the settled law of Maryland that where injury was the consequence of the incompetency or neglect of a fellow servant, even if he be an inspector, no recovery can be had, and in this respect the Maryland doctrine is more stringent than that obtaining generally. The court found, however, that no negligence could be attributed to the inspector, but that the company had been guilty of negligence in not providing for the safe custody of the car between the time of inspection and its use by plaintiff. In Southern Pacific Co. v. Lafferty, 57 Fed. 536, 6 C. C. A. 479, where the injury was occasioned by a collision between two "live" engines which had in some unexplained way run away from the railroad yard where they had been left after the day's run, and the train on which plaintiffs' intestate was a brakeman, it was said:

"It is the duty of a railroad company to see that its locomotive engines, after their run, are left in a place of safety. If left where they are liable to be put in motion by the careless, negligent, or wilful act of outside parties, it is as much the duty of the railroad company to see that they are properly guarded to prevent accidents from occurring as it is to see that a sufficient number of employes are put on board the trains set in motion by its own orders."

And, commenting upon this statement, the court, in the case of Crawford v. United R. & E. Co., supra, adds:

"And, as a corollary from this, it follows that wherever the safety of a servant depends upon the inspection of some agency of the master which is negligently exposed in an unsafe place after inspection, and before its use, the master will be liable for injury resulting from such negligence."

Again, in Smith v. New York, S. & W. R. Co., 46 N. J. Law, 7, where loaded cars set on a side track and chocked by a tie escaped

on the main track and caused a collision, the question of the company's negligence was held to be for the jury, though there was no proof as to how the cars escaped. These cases have been referred to because of the strenuous contention of counsel for the defendant that it was the duty of plaintiff to prove as part of his prima facie case when this brake staff got out of repair, or out of position, and refers to the charge of the court as sustaining that view, and I think the oral charge does, in a measure, sustain the view, and therein I believe the charge is, in a measure, wrong. I still think that, if the evidence disclosed a use of this car by the fellow servants of the defendants after the inspection of the train as it came into the yard, it would go to show that its condition was the result of such use, and so rebut the prima facie case made by plaintiff; but I further believe and hold that, if such movement and use occurred, it was the duty of defendant to show it affirmatively as part of its case, and that it is neither to be presumed to have occurred, nor is it the affirmative duty of plaintiff to show that it did not occur. Why should it be? The car was in the custody of the company, not of the plaintiff. If it was used and moved by the company's employés in the course of their duties, it was done by the company's direction, and it should and would know it. If, on the contrary, it was tampered with by an outsider, as suggested in defendant's supplemental brief, the cases just cited hold that a failure to use proper care to prevent or discover such act was negligence of the company.

What, then, in the absence of a showing by defendant that the car was handled after its inspection by the fellow employés of the plaintiff, should prevent a jury from reasonably inferring that the position of this brake staff, which was abnormal, and constituted a trap for the plaintiff, had existed since before the train inspection proved by defendant? The abnormal position, being opposed to the law of gravity, was clearly pre-existing in its nature. It could not occur of itself or in the mere moving of the car. It was the result of some prior use of a brake by a human being, and was utterly dissimilar to those defects which may occur at any time and from unknown causes. I do not think it is asking too much of a defendant when it goes into its case by way of defense to show, if it can, that a car shown to be out of order when plaintiff was injured had been prior to such time, and after its inspection, moved or handled by it, through its servants; and, when it fails so to do, the jury has a right to infer that such movement or handling did not occur.

Considerable time was given in the argument to the discussion of the maxim, "Res ipsa loquitur," and as to whether this maxim has any application to cases arising between master and servant. In the courts throughout the United States generally the applicability of this doctrine is involved in great doubt and uncertainty, a great part of which is no doubt due to the fact that many decisions are catalogued as coming under this maxim which, strictly speaking, have no occasion to be referred to it, but may be decided with sole reference to the general rule of circumstantial evidence. The United States courts have ruled with unanimity that the maxim, "Res ipsa loquitur,"

has no application to cases between master and servant. Patton v.
Texas & P. R. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361;
Shandrew v. Chicago, St. P., M. & O. R. Co., 142 Fed. 320, 73 C.
C. A. 430. I have no wish to enunciate in this case a different rule,
and I feel bound by that so frequently enunciated, but I feel also cer-
tain that in so holding the federal courts never gave expression, or
intended so to do, to the view that the general doctrine of circum-
stantial evidence was to be ignored or limited because the case in
which it was to be applied happened to be one between a master and
a servant. For a valuable and masterly discussion of the subject of
the applicability of the maxim, "Res ipsa loquitur," as between mas-
ter and servant, and more particularly of the proper distinction be-
tween that rule and the rule as to circumstantial evidence, I refer to
the editorial case note to Fitzgerald v. Southern Railway Co., as re-
ported in 6 L. R. A. (N. S.) 337 et seq., and which note, but for its
length, I would feel very much like quoting almost in toto, as it so
fully and admirably discusses and illustrates this vexed question. Re-
ferring to the general confusion that exists as to the position of courts
generally, upon the subject, the learned author of the note says:

"With respect to cases that have held that the accident, in connection with
the circumstances attending the same, was sufficient to make a prima facie
case of negligence, the difficulty arises mainly from the fact that the deci-
sions turn largely upon the circumstances of the particular case; and some
of the cases of this kind are hardly to be distinguished from cases which
merely apply the general rule that a fact in issue may be established prima
facie by circumstantial evidence without any direct evidence."

Further on (page 342) the author says:

"To restate in the light of this distinction the distinctive function of the
rule res ipsa loquitur: It is by the assumption of the postulate that physical
causes such as are shown to have produced the accident do not ordinarily
exist in the absence of negligence to permit the jury to infer some antecedent
fault of omission or commission on the part of the master from circumstances
which merely point to the physical causes of the accident, and which, apart
from that postulate, have no tendency, in and of themselves, to point to negli-
gence as the responsible human cause of the accident, and which do not
disclose conditions the existence of which may, without reference to any
antecedent fault of omission or commission, be found by the jury to con-
stitute negligence. The comparatively limited function of the distinctive
rules res ipsa loquitur may be expressed in a different way by the statement
that cases which deny that the rule ever applies as between master and serv-
ant do not prevent the jury from inferring negligence from circumstances,
in addition to the mere physical causes of the injury, which indicate some
antecedent fault of omission or commission on the part of the master as
the responsible human cause of the very accident in question, nor interfere
with the submission to the jury of the question whether the existence of
certain conditions, in and of itself, constitutes negligence without reference
to any antecedent omission or commission on the part of the master."

This language clearly shows that a resort to the maxim, "Res ipsa
loquitur," is not necessary when the circumstances of the case, as
shown before the jury by the evidence, do point to the responsible
human cause of the accident, and tend to show an antecedent fault
either of omission or commission, on the part of the master. As I
have heretofore pointed out, in the case at bar the evidence, aside from
showing the mere physical causes of the injury, showed that the

existing condition of the brake stem in its abnormal position was the result of human agency and human negligence on the part of the last user of the brake; that this condition indeed could not have occurred save by human intervention; and that it was, in its nature, continuing, at least in relation to the past, inasmuch as it could not have arisen of itself or by the mere movement of the car. In addition to this, the evidence was that this car came into the yard as a part of a train from Roanoke at 3 o'clock a. m., was inspected as a part of that train, and the evidence as to the method of that inspection was before the jury; and that, when plaintiff came to it in the morning, it was still attached to that train. The jury found as a fact that the inspection made that night was not a reasonably careful inspection, and there was evidence from which a reasonable man might have so found. I am of opinion from these facts that the jury, as reasonable men, were justified in inferring, in the absence of evidence to the contrary by the party in whose charge this car was from the time of its arrival until the time when plaintiff was called upon to use it, that the condition of the brake staff thereon, as it was when he used it, had existed at the time the car was first inspected, and that the defendant was negligent in said inspection, and that such negligence was the proximate cause of the injury to the plaintiff.

Wherefore the motion to set aside the verdict and award to the defendant a new trial will be overruled, and judgment will be entered on the verdict of the jury herein.