RAILWAY COMPANY *v*. JAGERMAN.

Opinion delivered May 5, 1894.

*Negligence—Master and servant.*

> In an action against a railroad company for the negligent killing of a locomotive fireman caused by derailment of an engine, it is error to instruct the jury upon the theory that it is the absolute duty of the defendant company to furnish its servants with a reasonably safe place in which to work, and with safeguards against accidents, or to use all means in its power to furnish a proper track and switches and keep the same in repair, as the master's duty is performed if he exercises due care to avoid exposing the servant to dangers that do not come within the obvious scope of his employment.

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge.

Action by Allie E. Jagerman, as executrix of Frank Jagerman, deceased, against the St. Louis and Southwestern Railway Company, to recover damages for the killing of her testator.   The case is stated by the court as follows :

This is an appeal from a judgment against the railroad for damages on account of the death of Frank Jagerman, which was caused by a wreck on appellant's road, at Jonesboro Stave Company's switch, on May 19th, 1891, by the derailment and overturning of an engine on appellant's road, upon which the deceased was at the time acting as fireman, in the employment of the appellant.

The complaint alleged that the " railroad had failed in the duty it owed to the deceased to provide him a good, safe and secure railroad track, and secure machinery and apparatus with which to operate their (its) trains upon defendant's railroad, and conducted itself so carelessly, negligently, and unskilfully in this behalf that it provided and used an unsafe and dangerous railroad track, turn-outs and switch connections, of which it had due notice, in that the switch, turn-outs, or spur connection, on its railroad near Jonesboro, were so carelessly and negligently constructed and arranged, as to be wholly unsafe and dangerous to trains passing north over its railroad."

The answer denied all negligence, and stated that the machinery, appliances, switches, etc., of its road were not defective, and, if they were, that the defendant did not know it, and that it was not negligently ignorant thereof, and that, if defects existed or occurred, they were but risks incident to the employment of the deceased, of which he had notice, etc.

The evidence tended to show that, as the engine on which the deceased was fireman went north over the appellant's road, it was wrecked in the night, between

8 and 9 o'clock, and that the deceased was killed by its derailment and overturning; that the switch at which the accident occurred was an approved split switch in general use on railroads in the South; that it was of the best kind of switch, was in good order and condition, after the accident, save some breaks caused by the overturning of the engine; that, about twenty minutes before the accident, a heavy freight train had passed over it; that the switch was examined after the wreck, and nothing appeared wrong with it, but that it was half open; that it was in first-class working order. The witnesses were unable to account for the accident.

G. L. Clements testified: "My information is that the front wheels of the locomotive ran down the main track, and the driving wheels took the side track, and the baggage car and express car followed the driving wheels of the locomotive; also the tender tank." He then proceeds to explain that this information was obtained by an inspection of the track and the condition of the wreck. Mr. Clements, the witness, was the yardmaster of the defendant at Jonesboro, and was at the scene of the accident in forty minutes after it happened.

J. B. Carpenter testified: "It looked to me as though the locomotive had followed the main track, and the car next to it had taken this track (meaning the side track). As a matter of course, it went this way, and afterwards turned the locomotive over." (Illustrating). Witness illustrates this fact and explains the cause of the accident as follows: Q. "Could that have been possibly done if there had not been a defect in the switch?" A. "I don't know if I'm a railroader enough to tell about that, but I should have judged that, after the locomotive had passed, the engine, in going over, partially opened the switch, and the next car on it took the switch to the track here. That was my opinion."

Against the objection of the defendant, the court, at the request of the plaintiff, gave the following instructions :

"1.  When defendant corporation employed the deceased as a fireman, it assumed a duty to the deceased to provide him with a reasonably safe place and surroundings, and with reasonable safeguards against danger, so as not to materially increase the danger attending the work required of said deceased as such fireman. The deceased assumed the natural risks incident to such employment, but did not assume any increased risks not incident to such employment, nor did he assume the risks incident to the negligence of the defendant corporation.

"3.  When the employment is hazardous, the employer assumes the duty of exercising reasonable care and prudence to provide the servant he employs a reasonably safe place and surroundings to exercise the employment, and to maintain, at all times during such employment, reasonable safeguards against accident while so engaged.

"7.  If the jury believe from the evidence that the switch complained of was so carelessly and negligently arranged, constructed or set up, or from use had become dangerous, and the plaintiff's intestate was not acquainted with its dangerous condition, and lost his life by reason thereof, while in the course of his duty, then they will find for the plaintiff.

"8.  The defendant company owed to deceased, as an incident to his employment, that it would furnish good and well constructed machinery, adapted to the purpose of its use, and to use all means in its power to furnish a proper track, switches, and keep the same in good repair ; and if they failed in this, and an injury results to one of its employees, the defendant company is liable."

Which are all we deem it necessary to notice.

*J. M. & J. G. Taylor* and *Sam H. West* for appellant.

1. The first, second and sixth instructions given for plaintiff were condemned in 19 S. W. Rep. 600 as ambiguous and misleading. The railroad company strictly complied with the law, as laid down in 44 Ark. 529 ; 47 Mo. 508 ; 45 Ark. 256.

2. The eighth instruction is in contravention of the doctrine in 44 Ark. 529 ; Ray on Negl. of Imposed Duties, pp. 141–142 ; 47 Mo. 508. See also 48 Ark. 474 ; 125 Pa. 160 ; 44 A. & E. R. Cases, 495–6 ; Whart. Negl. sec., 134.

3. There is no evidence to support the verdict. 21 S. W. Rep. 1063.

4. The errors in the plaintiff's instructions were not cured by the instructions given for defendant.

*N. T. White*, *H. King White* and *W. T. Woolridge* for appellee.

The master owes to the employee the duty to keep the track, switches and turnouts in good condition. Mr. Rorer, in his work on Railroads, page 1211, lays down the law of this case thus : ''The employees of a railroad corporation are entitled to have, and it is the duty of such corporations to furnish, safe material and structures, and they must, in the first instance, properly construct their roads with all the necessary appurtenances, and *thereafter keep the same in proper repair*, and free from obstructions ; for a failure therein, they are liable to employees for injuries and damages caused by reason of such omission, unless the defects causing the injury were well known to the employee, and had been for a reasonable time in which to object thereto, and no objections or notice as to the same were made to the superior, for then there can be no recovery.'' The obligation on the part of the company cannot be delegated to an agent, so as to relieve it from

responsibility.   67 N. Y. 593; 79 N. Y. 240; 49 Texas,
181; 6 Mo. App. 389.   Defendant's neglect in this respect
is a question of fact for the jury.   11 Kas. 83; 17 Hun,
115; 79 N. Y. 240; 53 Ia. 595; 31 Ohio St. 479.   This
court has expressed no doubt as to the responsibility of
a railway company to its employees in this regard.   46
Ark. 567; 48 *id*. 461; 52 *id*. 478; 54 *id*. 289.   This is the
only question in the case.   Every other phase was fully
covered by the charge of the court.

HUGHES, J. (after stating the facts.)   The first and
third instructions given for the appellee were ambigu-
ous and misleading, and almost identically the same in-
structions were condemned by the court in the case of
the *Emma Cotton Seed Oil Co.* v. *Hale*, 56 Ark. 236,
where the court said of similar instructions: "They
may be reasonably interpreted to mean that a master is
bound to furnish his servants with a reasonably safe
place in which to work, and with safeguards against ac-
cidents.   This is not the law." It is well settled, said the
court, in substance, that when one enters the service of
another, he takes upon himself the ordinary risks of the
employment in which he engages.   On the other hand,
the employer takes upon himself an implied obligation
to provide the persons employed with suitable instru-
ments and means with which to do his work—when ex-
ercising due care himself—safely, or without exposure
to dangers that do not come within the obvious scope
of his employment.

The seventh and eighth instructions are in contra-
vention of the doctrine announced by this court in *St.
Louis, etc. R. Co.* v. *Harper*, 44 Ark. 559, where the
court said: "It is not an absolute duty of the master
to maintain suitable and safe engines and machinery for
his servants.   There is no warranty that they are safe
in the beginning, or that they will be so at any time.
The master's duty is performed if he uses due care and

diligence to effect this end, and this is rigidly required of him." "When there is no notice to the master of defects, and no blame imputable to him for not discovering them, he is not liable, if injury results to his employee therefrom." *Noyes* v. *Smith*, 28 Vt. 59. "When an injury has occurred to the servant in consequence of machinery furnished by the master, to warrant a recovery the servant must show negligence, or the want of care and diligence by the master, in relation to the defect. The *onus* of proof is not shifted to the master, as in the case of a passenger injured by a common carrier, by proof of the fact that an injury has resulted from the defect."

In *Little Rock & Fort Smith Ry. Co.* v. *Eubanks*, 48 Ark. 474, Judge Smith, quoting from Patterson's Railway Accident Law, sec. 284, said: "Railways do not warrant to their servants the safe condition of their line and machinery; and they guarantee only that due care shall be used in constructing and keeping in repair and in operating the line, appliances and machinery." *Little Rock & Fort Smith R. Co.* v. *Duffey*, 35 Ark. 602; *Probst* v. *Delamater*, 100 N. Y. 266. Though instructions adopting a different theory to these were given at the request of the defendant, they were contradictory, and not explanatory of those given for the plaintiff, and did not cover the defects in them. "The court should harmonize the instructions, else they are calculated to confuse and mislead the jury." *Selden* v. *State*, 55 Ark. 397.

For the errors indicated, the judgment is reversed, and the cause is remanded for a new trial.

Bunn, C. J., was disqualified.