NORTHERN PAC. R. CO. v. BLAKE.

(Circuit Court of Appeals, Eighth Circuit. July 16, 1894.)

No. 381.

INJURY TO BRAKEMAN — NEGLIGENCE OF RAILROAD — RECEIVING CARS WITH DOUBLE BUFFERS.

For a railroad to receive from a connecting line, and transport, cars with double buffers or deadwoods, in good condition, is not negligence making it liable to a brakeman for injury received in coupling, they being in use on other well-managed roads.

In Error to the Circuit Court of the United States for the District of Minnesota.

Action by J. E. Blake against the Northern Pacific Railroad Company for injury received by plaintiff as a brakeman. Judgment for plaintiff. Defendant brings error. Reversed.

Tilden R. Selmes (J. H. Mitchell, Jr., with him on brief), for plaintiff in error.

M. D. Munn, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge. The only question arising upon this record, which we deem it necessary to consider, is whether the trial court properly allowed the jury to determine, as it seems to have done, whether the use by the defendant company of cars having double buffers, or "double deadwoods," as they are more frequently termed, was an act of culpable negligence, such as would justify a recovery. The defendant in error brought a suit against the plaintiff in error, the Northern Pacific Railroad Company, for injuries which he had sustained while in its employ, as a brakeman, in attempting to couple together two foreign freight cars that were provided with double buffers. The complaint, as originally drawn, did not allege that the railroad company was at fault in receiving and hauling cars of that construction. But shortly after the trial began the plaintiff was permitted, over an objection made by the defendant, to amend his complaint so as to charge that the defendant was guilty of negligence in using cars with double deadwoods; and considerable testimony was thereafter introduced which tended to show that the use of double deadwoods enhances the risk of making a coupling, and that more care must be exercised in handling cars that are thus constructed. At the conclusion of the testimony the court, among other things, charged the jury as follows:

"Although cars come from other roads, and may be more dangerous, he is required to handle them; and although cars belonging to the defendant, and used on its road, were different in their construction, the plaintiff is supposed to be competent to handle all cars which the company is bound to receive and haul over its road. So that one of the questions which is involved in this allegation of negligence is, did the defendant company have in this train of cars certain cars which were not adequately and reasonably safe for the purposes for which they were used, in connection with the duty which the plaintiff was

required to perform? * * * The use of double-deadwood cars upon the defendant's railroad is not per se negligence, but they may be constructed in such a way or in such a mode as would render them not reasonably safe appliances under the circumstances; and it is for you to determine whether, under the circumstances of this case, the defendant company exercised reasonable care and caution to furnish reasonably safe appliances for this plaintiff to do his work with when coupling cars."

As there was no evidence in the case which tended to show that the cars in question differed in any respect, as to their mode of construction, from other cars having double deadwoods, we are forced to regard this portion of the charge as leaving the jury at liberty to find that the mere fact that the company had these particular cars in use on its road was an act of negligence, for which it might be held responsible. If this was not the meaning which the court intended to convey, it is certainly true that the language employed was open to that construction; and, after a careful perusal of the evidence, we are satisfied that the jury must have held the company responsible for the plaintiff's injuries solely on the ground that it did not exercise reasonable care on the occasion of the accident, in using cars with double deadwoods. It is true that there was some evidence tending to show that one of the projections forming a part of the deadwood on one of these cars had been broken off prior to the accident, but, as this was on the side of the car opposite to that on which the plaintiff was standing when he was injured, it does not seem to us at all probable that such defect in the deadwood was the proximate cause of the accident. Indeed, we can hardly conceive it to be possible that the last-mentioned defect contributed in any way to occasion the injury, or that the jury so found. It is far more probable, we think, that the jury understood that part of the charge to which we have above referred as leaving them at full liberty to find—and that they did in fact ultimately find—that the railway company was at fault, in view of all the circumstances of the case, merely because it used cars with double deadwoods. It accordingly becomes necessary to consider the case from that standpoint, and to determine whether it was the legitimate function of the jury to decide that the railroad company violated its duty to the plaintiff, in receiving and hauling cars which were equipped with such coupling appliances. With reference to this question, we think that it may be safely said that none of the adjudged cases go to the extent of holding that a railway company is guilty of culpable negligence in using cars that are provided with double buffers, whether they are cars of its own construction, or cars that have been received from some connecting carrier. The generally accepted doctrine is that a railway company is not bound to use upon all of the cars in its possession the safest possible coupling appliances, or appliances of the latest and most improved pattern. It is at liberty to use such coupling appliances as are in use at the time by other well-managed roads, and such as are regarded by competent railroad men as ordinarily safe and fit to be used. This court recently had occasion to approve that doctrine in the case of Railway Co. v. Linney, 7 C. C. A. 656, 59 Fed. 45, 48.

The fact that railroad companies are now very generally required by statutory enactments to receive and transport cars which are tendered to them by connecting carriers has led several courts to decide, after a very full and careful consideration of the question, that it is the right and duty of a railway company to receive and transport double-deadwood cars, such as are at the time in use on other railroads, if they are in good condition and free from defects, even though the use of such cars may enhance the risk to which a brakeman is exposed in the act of making couplings. It has been held, in effect, that the necessities of commerce and public policy alike demand that such cars should be received and transported by a railway company, even though it does not make use of such coupling appliances on cars of its own construction, so long as such cars are in general use on other leading lines of railroad, and so long as many competent persons justify the use of such coupling appliances on the ground that they are not unnecessarily dangerous, and that certain advantages result from that method of construction. In line with these views it is also very generally held that the risk of getting hurt while coupling cars having double deadwoods is one of those ordinary risks of the employment which a brakeman assumes on taking service, especially if, as in the case at bar, he is an old and experienced railroad operative. Railroad Co. v. Smithson, 45 Mich. 212, 7 N. W. 791; Baldwin v. Railway Co., 50 Iowa, 680; Railroad Co. v. Flanigan, 77 Ill. 365; Hathaway v. Railroad Co., 51 Mich. 253, 16 N. W. 634; Thomas v. Railway Co., 109 Mo. 187, 18 S. W. 980. The doctrine of these cases has been recently cited and approved by the supreme court of the United States in Kohn v. McNulta, 147 U. S. 238, 241, 13 Sup. Ct. 298. It is proper to note in this connection that our attention has been directed by counsel for the defendant in error to certain cases, notably Reynolds v. Railroad Co. (Vt.) 24 Atl. 135; Railway Co. v. Frawley (Ind.) 9 N. E. 594; Railway Co. v. Callbreath, 66 Tex. 528, 1 S. W. 622; and Hungerford v. Railway Co., 41 Minn. 444, 43 N. W. 324,—in support of the contention that it was the duty of the defendant company to have given the plaintiff special notice to be on the lookout for cars having double deadwoods, and that it was guilty of culpable negligence in failing to give such notice. The cases last referred to do indeed support the proposition that it is the duty of a railway company to give special warning to young and inexperienced persons in its employ, when it proposes to make use of cars that are not in general use on its road, and that are more than ordinarily dangerous. They also show that it is likewise the duty of a railway company to give like notice when it proposes to make some special and unusual use of a peculiar form of coupling appliance. especially if such unusual use of a peculiar form of coupling appliance renders the act of coupling more dangerous. These cases merely illustrate the general doctrine that where an employé is young and inexperienced, or the risk is a latent or unusual one, and for either reason there is more than ordinary danger of getting hurt. the employé should be specially warned. In such cases the employé should not be left to rely upon

his experience of the dangers ordinarily incident to his calling. But we do not see that the doctrine in question has any special application to the case at bar. The plaintiff was an experienced brakeman, who had been in service, either as brakeman or conductor, for fully 17 years. It was shown that at least 10 double-deadwood cars daily passed through the yards at the eastern terminus of the defendant's railroad at St. Paul. It was further shown, by the plaintiff's own admission, that he was familiar with one of the defendant company's rules, which contained the following warning to all of its employés:

"Great care must be exercised by all persons in coupling cars. Inasmuch as the coupling apparatus of cars or engines cannot be uniform in style, size or strength, and is liable to be broken, and as, from various causes, it is dangerous to expose between the same the hands, arms, or persons of those engaged in coupling, all employés are enjoined, before coupling cars or engines, to examine so as to know the kind and condition of the drawheads, drawbars, links, and coupling apparatus, and they are prohibited from placing in the train any car with a defective coupling until they have first reported its defective condition to the yardmaster or conductor."

Moreover, the trial court did not submit an issue to the jury, nor was it asked to do so, touching the question whether the plaintiff was entitled to special notice of the use by the company of double-deadwood cars by reason of his lack of experience in handling such cars. On the contrary, and as heretofore stated, the case was submitted to the jury under instructions which, in our judgment, gave them full liberty to find that the company was at fault in receiving and using cars with double buffers, and upon this erroneous ground a verdict against the company in the sum of $10,000 evidently rests. The judgment of the circuit court must therefore be reversed, and the cause remanded, with directions to award a new trial. It is so ordered.