SOUTHERN PAC. CO. v. GLOYD.

(Circuit Court of Appeals, Eighth Circuit. April 15, 1905.)

No. 1,946.

1. MASTER AND SERVANT—SAFE PLACE TO WORK—CARE REQUIRED OF RAILROAD COMPANIES.

The care which the law requires of a railroad company respecting the safety of the place where work is to be performed by its employés is ordinary care, such as prudent, intelligent, experienced men usually use under like circumstances to guard against dangers reasonably to be anticipated. It is not bound to use the best and safest guards or appliances, but, if it uses such as are customarily used under like circumstances, it discharges its duty.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 173, 174, 183, 184, 188–190.]

2. SAME—INJURY OF BRAKEMAN—MAINTAINING OPEN CULVERT.

Where a railroad company had for 30 years maintained open culverts on its line at all points remote from stations, without any injury having resulted therefrom to employés, or any fires having occurred on such culverts, while several had occurred on its planked culverts, near stations, caused by coals dropped from engines on the planking, it was not chargeable with negligence in maintaining such open culverts on a grade where it was frequently necessary to cut trains in two and double in going up the grade, and was not liable for an injury to a brakeman accustomed to the road by falling through such a culvert while so cutting a train in the night; the risk therefrom, in view of the custom of such road and all others in the region to use open culverts, being one which the brakeman assumed.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 555.

Assumption of risk incident to employment, see note to Chesapeake &. O. R. Co. v. Hennessey, 38 C. C. A. 314.]

3. SAME—ACTION FOR INJURY—INSTRUCTIONS.

An instruction, in an action against a railroad company to recover for an injury to a brakeman by falling through an open culvert, which stated that the degree of care required from defendant in the construction of the culvert was such as a master would ordinarily use if the danger to be guarded against was a personal danger to the master himself, is erroneous, as stating an incorrect measure of care, as well as misleading, in that there could be no evidence to make it applicable to a railroad company.

In Error to the Circuit Court of the United States for the District of Utah.

The defendant in error (plaintiff below), after three years' service as locomotive fireman on a Wisconsin railroad, entered defendant's service as freight brakeman March 5, 1902, upon the division of defendant's railroad between Carlin and Wadsworth, a distance of 256 miles. He made one trip over that division in March; four or five in April; and from July 1st, worked steadily, except one day, until July 21st, when he was injured. Up to his last trip he had been head brakeman, but on that trip he was rear brakeman. On this division was Rokeby Hill, ascending eastward from Cressid to

Rokeby, a distance of two miles, on a grade so steep that more than three-fourths of the east-bound freight trains had to be "doubled" on that hill. The engine would haul the whole train up the hill until it could no no far-ther, when the train would stop, and be separated near the middle, and the rear section left with brakes set, to hold it while the engine went on with the forward section to a siding at the top of the hill, whence it would re-turn and take up the rear section, when the train would be united, and go on. Some freight trains went over the hill without "doubling," and all oth-ers, before being separated, were taken as far up the hill as the engine could haul the whole train; and thus the stopping of the train and the necessity of dividing it might occur at any place from near the bottom to near the top of this long hill. At Cressid there was a switch siding, and at a short distance east of that was a culvert, crossing the roadbed under the tracks for the passage of water. This culvert was covered with plank at least for a space of four feet outside of each rail. At long distances from this cul-vert and from each other two other culverts, to allow the passage of water, crossed the grade of the railroad at different places on the slope of this hill. These two culverts were each eight feet or more in width, of varying depth, and without covering, except the stringers, ties, and rails. On that division of said railroad over which the plaintiff was constantly passing were 168 similar open culverts. On July 21, 1902, the freight train on which plaintiff was rear brakeman left Wadsworth, going east, with 20 loaded and 2 empty cars. On reaching Rokeby Hill after midnight, plaintiff, by direction of the conductor, went ahead over the cars to about 10 cars from the engine, to be ready to "double"; and, when the train stopped, plaintiff passed to the ground with a lantern, turned the air cock, uncoupled the hose, and released some air to set the air brakes in the rear section, and signaled the engineer for slack, which being responded to, he pulled the coupling pin, and signaled the engineer to go forward. But the backward movement had started the rear section, and plaintiff, observing that he had not released air enough to cause the brakes to hold that section, followed its backward movement to correct this. He followed it about 10 feet, reaching over the drawhead for the hose cock to release more air, when he stumbled into one of these open culverts, falling partly down, sidewise, when, the forward section of the train being still moving backward, his arm was caught between the drawheads of the cars, and so injured as to make necessary amputation near the shoulder. Other facts will be mentioned in the opinion. In this action the negligence charged against the defendant was the leaving this culvert open and uncov-ered. The verdict was for the plaintiff.

Henry G. Herbel (Martin L. Clardy, on the brief), for plaintiff in error.

W. L. Maginnis (Charles Stout, on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge, after stating the case as above, de-livered the opinion of the court.

The evidence shows that the culvert where the accident occurred was not in the vicinity of any yard, and was about one-half mile distant from the nearest switch, and passed through and across the fill under the track on the main line of the defendant's railroad. So far as appears, it was in good repair and without defect. But it was not covered with plank, and was therefore open between the ties. This mode of construction is alleged to be negligent, and lack-ing in that ordinary care which a railroad company is bound to exer-cise in providing a safe place for the performance of their work by its employés. The places where employés on a railroad must per-

form their work, whether upon trains when moving, or about trains upon tracks, culverts, bridges, or switches, are usually unsafe, unless intelligent care for his own safety is exercised by the employé. The care which the law requires of the railroad company respecting the safety of the place where the work is to be performed is ordinary care—such care as prudent, intelligent, experienced men usually employ under like circumstances to guard against dangers reasonably to be anticipated. It is not bound to use what the court or jury may regard as the best and safest guards or appliances. If it uses such as are customarily used under like circumstances, it discharges its duty. Following the custom of all railroads in that regard, the defendant railroad company had covered its culverts at stations, yards, and switches, where men were habitually working on the ground about trains, and generally present to protect such covered culverts from fires caused by coals dropped from engines on the plank covering, but left all its culverts on its main line, distant from stations, yards, and switches, uncovered, as less exposed to danger from fire which might cause wreckage of trains, and also from danger of weakening from decay caused by moisture held between planks and timbers. On the division upon which plaintiff had worked as brakeman during the time stated, there were, and had been since the year 1868, 168 such open culverts, including those on Rokeby Hill, and, though the practice of "doubling" freight trains had been the same during all this time, no such accident had ever before happened, while many fires upon the covered culverts had occurred. It was the duty of the railroad company to use care to guard against all probable dangers to its trains laden with passengers and freight, and surely against so serious a danger as the weakening or destruction by fire of culverts on its main line, away from yards or stations where such fire would be observed. It had, in view of the dangers to be apprehended, and of the universal usage of railroads in that region, to use its discretion as to whether it was safer, all things considered, to maintain this particular culvert covered or uncovered, under the rule, which has been applied to unblocked frogs (Gilbert v. Burlington, etc., R. Co., 128 Fed. 533, 63 C. C. A. 27), double deadwoods (Northern Pacific R. Co. v. Blake, 63 Fed. 45, 11 C. C. A. 93), sharp curves (Tuttle v. Ry. Co., 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114; Kohn v. McNulta, 147 U. S. 238, 13 Sup. Ct. 298, 37 L. Ed. 150). And as fires had started in the covering of culverts on that division, that was a danger of which the defendant company was warned and should guard against, while, as no harm to an employé had happened during all that time from the many uncovered culverts on the same division, such danger would be less likely to be anticipated.

The company would hardly expect that a brakeman would have passed as many times as plaintiff did over that division of its railroad, with its 168 open culverts, without, as plaintiff testified, having observed any of them, or anticipate that descending from a car, with a lighted lantern, 10 feet from such large, open culvert, which must have been plainly visible at the side of the track, he would there, just above the culvert, go between two cars and separate

them, failing to release sufficient air to set the brakes of the rear cars, and follow those cars, with the lantern in his hands, into the open culvert, in his tardy attempt to release more air. The pretense that, in releasing air to set the brakes in the first instance, there was need of caution not to release too much, and set the brakes too hard, lest a jerk should endanger the drawheads, is palpable. The train had stopped still for lack of power, when being drawn up an ascent. Between each car the "slack was out" when the train stopped, and no excess of brakes could have caused any jerk.

The evidence made it clear that open culverts between stations and away from switches were in common use upon all railroads in that part of the country. The use of this open culvert was therefore not negligent on the part of the defendant, and any danger from such culvert was a risk assumed by plaintiff—an ordinary risk of his employment. Titus v. Bradford, B. & K. R. Co. (Pa.) 20 Atl. 517, 20 Am. St. Rep. 944. The motion for a directed verdict for the defendant should have been granted.

Respecting the degree of care which the defendant should exercise in providing a safe place for its employés when performing their work, the court charged the jury as follows:

"The particular amount of care that was required of the defendant was just that care that an ordinary, prudent man, under those particular circumstances, in conducting that business, would use if the danger resulting from a want of care was his personal danger. If the defendant measured up to that standard, it was not guilty of negligence; if it fell below that standard, it was."

The instruction assumes that greater care will be exercised where the danger to be guarded against is danger to the person of the master. An exception taken by defendant covers this portion of the charge. It is not specified as error in the assignment of errors, but was the subject of argument in the briefs and at the hearing; and, as there must be another trial, which will raise the same question as to the degree of care incumbent on the defendant, the correctness or inaccuracy of this instruction should be now determined. The instruction, as given, is erroneous. The law requires that a master shall use ordinary care to provide for his servants a safe place in which to do their work. Ordinary care, as before stated, is that degree of care which prudent, intelligent, and experienced men usually employ under like circumstances to guard against dangers which are obvious or reasonably to be anticipated. This rule is plain, reasonable, and easily understood; and whether or not a master has in a particular case used ordinary care is readily determined by proof of the care which is usually employed by other prudent, intelligent men, engaged in like business under like circumstances, and in view of like hazards. The vice in the instruction given in this case is not only that it is not in accord with the well-settled law on the subject, but, in stating to the jury that the degree of care required was such as the master would ordinarily use if the danger to be guarded against was personal danger to the master himself, the court gave to the jury a rule which could not be

applied to the evidence in the case on trial, as there was no evidence as to what care or precaution was ever taken as to culverts or like structures on any railroad, when the conditions made the danger arising from want of care the personal danger of the master. Upon no railroad that ever existed did its principal managing officers (who, in the aggregate, may be regarded as the master, so far as the master's personality can be considered susceptible of danger) form the operating crews of trainmen on the trains, or become liable to the hazards of such an accident as happened in this case. Hence there was no evidence before the jury, and none could have been adduced, tending to show what different or additional precautions were, in the exercise of ordinary care, usually taken by prudent and intelligent principal officers and mangers of a railroad in respect to the construction of culverts on their main line, where such officers and managers were also the brakemen on the trains, and personally subjected to whatever perils to brakemen might arise from the culverts along the line. Such an instruction, applicable to no evidence in the case, could only leave the jury to conjecture what care or precaution would be taken under such fanciful conditions, if by the exercise of their imaginations they could bring themselves to contemplate as real such visionary unreality. The object of stating a rule of law to a jury is to afford them a safe, practical guide, which can be comprehended, and which is applicable to the evidence they are to consider, and which, if observed, will lead them to right conclusions from that evidence. To give the jury a rule that is not applicable to any evidence in the case, or that can be produced, can only mislead them, and is manifest error. The exact question, arising upon a similar instruction, has just been considered in this court in Southern Pacific v. Hetzer (C. C. A.) 135 Fed. 272, wherein Judge Sanborn reviews the authorities, and so clearly demonstrates the error in the instruction that further comment is needless here.

Judgment is reversed, and the cause remanded, with directions to grant a new trial.

HOOK, Circuit Judge, concurred in the reversal, but not in all of the grounds as stated.