ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY
*v.* FITHIAN.

Opinion delivered February 3, 1913.

1. RAILROADS—CONSTRUCTION OF ROAD BED—DUTY TO EMPLOYEE.—In an action against a railroad for the negligent killing of one of its employees, by a derailment, where it appears that the road had been in operation for thirty years, and trains had crossed the particular track for that time without accident, and the same is shown to have been constructed by a capable engineer and inspected daily, the railroad company will be held to have discharged its duty of ordinary care to its employees, in the construction and maintenance of its track and road bed. (Page 501.)

2. RAILROADS—SPEED OF TRAIN—NEGLIGENCE.—In an action against a railroad company for the negligent killing of an employee, the railroad company will be liable if the accident was caused by the running of the train at a dangerously high rate of speed, for the particular place where the derailment occurred, even though the track and road bed were properly constructed and maintained at the particular point. (Page 501.)

3. EVIDENCE—NONEXPERT OPINION—SPEED OF TRAIN.—Any person of ordinary understanding and common observation is competent to speak upon the question of the speed of a moving train. (Page 502.)

4. EVIDENCE—EXPERT TESTIMONY—SPEED OF TRAIN.—An expert, who has skill and knowledge acquired from the study of and operation of trains, may give expert opinion as to the speed at which a train was going, based upon the facts shown to exist at the time of the derailment. (Page 502.)

5. EVIDENCE—EXPERT TESTIMONY—HYPOTHETICAL QUESTION.—The answer of an expert witness to a hypothetical question, relative to the speed of a train at a point where a car was derailed, will not be held improper, for failure to include in the question all material facts, including the construction of the track, where the witness has inspected the place of the accident, and observed conditions as they existed at the time of the accident. (Page 503.)

6. EVIDENCE IN ACTION BY ADMINISTRATOR.—An action against a railroad company for the negligent killing of an employee can be brought under the employer's liability act by the administrator only; so when such a suit is brought by the administratrix, who is also the widow of the deceased, the administratrix is only a formal party and the estate has no interest in the recovery, and the widow is not precluded from testifying concerning contributions made by the deceased, before his death for her support and that of their minor child, within the meaning of schedule section 2, Constitution of 1874, prohibiting the administratrix from testifying as to transactions with or statements of the deceased. (Page 504.)

7. EVIDENCE—EXPERT OPINION—CAUTIONARY INSTRUCTIONS.—Where the opinion of experts as to the speed of a train is based upon both the hypothetical question and their knowledge of conditions attending a derailment, it is not a reversible error for the trial court to refuse to give instructions cautioning the jury to reject the opinion of the experts, if they rejected the facts stated in the hypothetical question. (Page 505.)

Appeal from Sebastian Circuit Court; *Daniel Hon,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellee, the administratrix of the estate of the deceased, brought suit for the benefit of herself and minor son against appellee for damages for the wrongful death of her husband, Lloyd George Fithian, alleged to have been caused by the negligence of the railroad company. The complaint alleges that the deceased was in the

employ of the railroad company, as a brakeman on one of its trains, and while in the performance of his duty as a brakeman upon a train engaged in interstate commerce, he was killed through the negligence of the said railroad company, as follows:

"That on the 2d of March, 1911, the car upon which Fithian in the performance of his duty, was riding, was derailed, causing his instant death; that the derailment was caused by defect in the track or road bed of defendant and that the track and road bed where the car was derailed was constructed so that trains should run over the same slowly, and that the employees negligently ran the train at a rate of speed greater than was safe to run the train over said track and road bed, causing the derailment and death of Fithian. That deceased was twenty-six years of age with an earning capacity of $100 per month, with opportunities and chances for an increase; that he was strong, healthy, and supported his wife and child, and was their only support. That the value of the contributions which he would have made to them during his natural life would have been $10,000, in which sum they were damaged. That the minor son has been damaged in the sum of $2,500 in the loss of parental training, care and attention, which his father would have given him during his minority. Prays judgment for $12,500."

The answer admits that the train was engaged in interstate commerce; denied that deceased was killed through any negligence of the railroad company; and denies specifically all the acts of negligence alleged in the complaint. Denied the earning capacity of the deceased. as alleged and his contributions to the widow and next of kin; alleged that the deceased was well acquainted with the condition of the track, road bed and trestle, and the manner and rate of speed at which the train was operated and, knowing all these facts remained in the service of the defendant company and thereby assumed the risk of injury arising from said causes    *    *    *    *

The facts substantially are that the deceased, Lloyd

George Fithian, was a brakeman in the employ of the appellant company, at work on appellant's local freight train on the day of the accident and his death. About one mile south of the Frisco passenger depot in Ft. Smith, a refrigerator car, empty, except as to the ice in the bunkers, the fourth car back from the engine in the train, left the rails, ran along a bridge or trestle for about thirty feet and fell down the embankment at the north end of the bridge, breaking Fithian's neck and killing him instantly. It is not questioned that he was riding on the car in the performance of his duty, in accordance with the rules of the company. A scar on the rails of the track showed where the derailed car had mounted the rail, about seven feet west of the west end of the bridge; ran along on top of the rail for nine or ten feet and then jumped off on the ties on the bridge and continued across it on the ties, to the embankment, where it fell a considerable distance. The testimony was in conflict as to the speed of the train, all the other employees of the train testified its speed was from ten to twelve miles an hour and not over fifteen in any event; the engineer, fireman and two of the brakemen testified that the train stopped at the Iron Mountain crossing, 1,668 feet away from the bridge and that it could not have acquired a greater speed than that after making such a stop. Two ladies testified, and one of whom, who was the wife of an engineer, testified that she had ridden frequently with her husband in the engine and knew how to run an engine herself and was acquainted with the speed of a train, said the engine was going, at least, thirty-five miles an hour at the time of the wreck and from the speed at which it passed her shortly before reaching the bridge where it was derailed and went over the embankment was so great she was satisfied it could not have stopped at the crossing below, as stated by the employees. From her knowledge of the speed of trains it would not have been possible for it to have acquired that rate of speed from a stand start, at that distance. The other witness testified that she was not sufficiently acquainted with the running of trains to

state at what speed the train was going, but that she had observed trains passing, as she lived near the railroad for some years and that the train was going as fast as she ever saw one run before it reached the bridge, left the track and turned over.

Dr. I. A. Ryan was present when the car turned over and killed the deceased, observed the running of the train and saw nothing unusual about the speed of it. Didn't think it could have been going more than twelve or fifteen miles an hour. Two civil engineers, experts, testified over appellant's objection, that from their knowledge of the operation of trains and their observation of the condition of the track and information as to the distance the engine ran after the train broke in two before it stopped, that the train must have been going as much or more than twenty miles an hour. Appellee's witnesses, one an ex-road master for the Iron Mountain, of years of experience, and a civil engineer and employee of the street car company in Fort Smith, made measurements of the track, the curves and elevations of the rails and testified that the injury occurred on about a three degree curve. That proper railroad construction required that the outer rail of the track be elevated about three inches above the other to make safe the road bed for trains making any speed. They testified further that from the measurements made from the beginning of the curve on up to the bridge where the car left the track, that the elevation was all the way from one inch to three inches and three and a half inches, and that it wasn't uniform; the ends of some rails and the middle of others being one inch, one and a half inches and two inches; at other places, it was higher and lower. They also stated the outer rail was a quarter of an inch lower at the west abutment of the bridge than the inner rail. They stated that this track was not properly constructed with reference to the safety of the operators of the train and road, and the running of trains for a speed of more than ten or twelve miles an hour; the road master testifying that, from his experience, he would have required a slow order

at the place to ten miles an hour. Their testimony does not disclose whether they took into consideration in stating it was negligent to construct the track on this curve with this elevation, the fact that a switch track led off from the main track fifty feet west of the bridge at a different curvature. The appellant's testimony shows that the track was the main line, over which thirty or forty trains per day pass; that the passenger trains ran at much greater speed than did the freight trains; that it had been in use for twenty-five years with the bridge practically as constructed at the time of the accident; that no other accident had occurred there on that part of the track; that the section foreman inspected it twice daily; he also stated it was in good condition at the time of the accident and the engineer, fireman and conductor, each, likewise, stated the track was in good condition; that they had been running over it, some of them, for years, at a like and greater rate of speed; that they made an examination of it after the wreck and found it in the usual good condition. The road master also examined it immediately after the wreck, being upon the passenger train behind the wreck and could discover no defect in it at all, and all the employees on the wrecked train testified that there was no unusual rocking of the train in crossing this track at the time of the wreck. It also appears that the bridge is in virtually the same condition as it has been for the past twenty-five years, being constructed of steel girders on stone or cement masonry. Appellant's expert civil engineer testified that the outer rail of the curve on the bridge was a quarter of an inch higher than the other and shown to be so by instruments made for measuring and ascertaining such conditions, accurately. The experts for appellee testified that it was a quarter of an inch lower than the other rail.

The court instructed the jury, refusing to give the peremptory instruction for appellant and also its instructions Nos. 13 and 14, over its objection, which are as follows:

"13. If the evidence fails to establish the material

facts upon which the expert opinions were based, then you should disregard the opinions of such experts based upon said facts.

"14. If any of the experts' opinions were based upon only a part of the essential or fundamental facts as developed in the evidence, you should take this into consideration in determining what weight should be given to the opinions of the experts."

The administratrix, Jessie Fithian, the widow of deceased, was permitted to testify over appellant's objection, as to the amount of the contribution her deceased husband had been making to her for the support of herself and family. It also developed that she had brought a suit recently before the accident for divorce against her husband, alleging as grounds therefor habitual drunkenness for the space of a year and such indignities offered to her person as rendered her condition intolerable. She explained, however, that the suit was instituted at the suggestion of her father and that the grounds therefor were put in by her attorney without her knowledge and that shortly after it was filed she telegraphed her husband and they made up and it was dismissed.

The wrecked car was in good condition and not defective at the time of the accident.

The jury returned a verdict, assessing the damages at $7,000. From the judgment thereon, appellant brings this appeal.

*W. F. Evans* and *B. R. Davidson,* for appellant.

1. There was no legal evidence on which to submit to the jury the issue of improper construction of the road bed at the time of the accident. The proof should have been confined to time and place. 48 Ark. 460; 34 Am. & Eng. R. R. Cases, 399; 16 N. W. 358. There is no evidence to warrant the submission to the jury of engineering questions touching the construction of the road, its curvature and the elevation of the track. 122 U. S. 189; 152 U. S. 145-153; 145 Fed. 137; 138 Fed. 388; 100 Fed. 250-252; 146 Ind. 218; *Id.* 572.

Appellant discharged every duty it owed to its employees by the inspections as shown by the uncontradicted evidence. The jury ought not to be permitted to hold the company to a higher degree of care than the law, nor to say that the inspections were not sufficient. 51 S. W. 758-775; 48 Ark. 460; 59 Ark. 98; 56 Ark. 212; 104 Fed. 746.

As to matters of common knowledge, opinions of an expert are not admissible. 55 Ark. 593-598.

An expert can not properly be asked his opinion on disputed questions of fact except upon hypothetical statement, unless he is personally acquainted with the material facts in the case. 55 Ark. 128. Hypothetical questions must embrace all the undisputed facts. 87 Ark. 243; *Id.* 394; 100 Ark. 518.

Instructions 13 and 14 were to the effect that if the hypothetical questions were not in accordance with essential facts, then the jury should disregard the opinions of the experts. They should have been given. *Supra*; 19 Am. & Eng. R. R. Cases 305-310, 31 Minn. 526; 79 Ark. 76.

2. As to the speed of the train, the testimony of the two ladies was inadmissible because as a matter of common knowledge and as shown by plaintiff's witness Boles, they could not have formed a correct opinion as to the rate of speed simply seeing the train approaching them in the way shown by the evidence. 92 N. W. 639; 38 Mich. 540; 15 Am. & Eng. Rep. (N. S.) 113-118; 87 Fed. 129. Moreover, this testimony was contrary to the physical facts. It was impossible for the train to have attained the speed they attribute to it from the place it last stopped.

Boles's expert testimony was not only illegal but absurd. *Supra*; 50 S. E. 731; 90 S. W. 977; 35 Mo. App. 87; 38 *Id.* 377.

3. The wife was incompetent to testify as to transactions with the deceased and the amounts contributed by him to her. Const. Ark. Sched. 2; 48 Ark. 133; 51 Ark. 401; 52 Ark. 520; 67 Ark. 318; 79 Ark. 69; 80 Ark. 277;

82 Ark. 136; 83 Ark. 210; 30 Fed. 653; 71 Fed 226; 81 Fed. 537; 112 Fed. 89; 102 U. S. 664.

4. It was error to admit testimony as to probable advancements, in the face of the proof that deceased was living in constant violation of the company's rules calling for his discharge by drinking intoxicants.  149 U. S. 266; 158 U. S. 334-336.

5. In view of the fact that plaintiff had filed a suit for divorce against deceased for drunkenness and non-support, the verdict for $7,000 notwithstanding the divorce suit was dismissed, was purely conjectural and excessive, and not warranted by the proof.  138 Fed. 867.

*Claude A. Fuller* and *Hill, Brizzolara & Fitzhugh,* for appellee.

1. Appellant's contention that the evidence of the defective road bed was incompetent in that the proof should have been confined to the time and place, is not sustained even by the authorities cited by it.  48 Ark. 460; 34 Am. & Eng. R. R. Cases, 399; 16 N. W. 358.  The testimony of Boles, Simmons and Knott was competent and admissible.  90 So. 526; 4 S. W. (Mo.) 389; 1 Wigmore on Ev. §§ 437, 438; 95 Ark. 284; 97 Fed. 423; 82 Tex. 234; 24. S. W. 686; 51 S. W. 537.  If, however, there had been any error in proving by Boles and Simmons, from their knowledge as experienced track men, that there had been no change in the tracks, such error would not have been prejudicial because that fact was established by the testimony of defendant's own witnesses.  82 Ark. 447; 79 Ark. 338; 78 Ark. 7; *Id.* 77; 68 Ark. 607.  It is incumbent on a railroad company to use such means as are necessary, whether by the use of a string or the periodical use of a level, to ascertain if the track is reasonably safe for the operation of trains upon it.  It is well established that a railroad company is liable to its employees for injuries due to a defective road bed.  48 Ark. 333, 346; *Id.* 460; 51 Ark. 457; 53 Ark. 347; 59 Ark. 98; 71 Ark. 159; 70 Ark. 297; 77 Ark. 556; 78 Ark. 505; 89 Ark. 326; 3 Elliott on Railroads, § 1296.  Under the Employer's Liability Act the duty to maintain a safe road bed is

absolute. 210 U. S. 281; 220 U. S. 580; 187 Fed. 949. Instructions 13 and 14 were properly refused. Expert evidence should be considered for what it is worth even if part of the hypotheses are not supported by the evidence, if other parts are so supported. 102 Ind. 539; 160 N. Y. 402.

It is not necessary that a hypothetical question embrace all undisputed questions. 87 Ark. 243; 100 Ark. 518.

2. The speed of the train was entirely a disputed question of fact for the jury to settle under the evidence.

3. The verdict is not excessive when viewed in the light of deceased's expectancy of life, his ability to earn, his contributions and devotion to wife and children. The filing of the divorce suit should have no bearing against it since plaintiff did not know its allegations, and immediately after its filing became, on her own initiative, reconciled to him.

4. Plaintiff was competent to testify to contributions made to her by deceased. 87 Ark. 286; 76 Ark. 377; 58 Ark. 180; *American Ry. Co.* v. *Birch,* 224 U. S. 547. Advance Sheets No. 14, p. 603; 67 N. E. 923; 21 L. R. A. 158; 37 Vt. 259; 16 Vt. 673; 61 Ill. App. 174; 67 Tenn. 49; 2 Woerner on Administration, § 398; 89 Mo. 121; 71 Mo. App. 305.

Kirby, J., (after stating the facts) : It is insisted that the court should have directed a verdict in appellant's favor; that there is not sufficient evidence that the derailment of the car was caused by any negligence or defective condition of the track or road bed, nor that the train was running at a rate of speed greater than was safe to operate it over that particular track and bridge.

The evidence warranted the jury in finding that the track was not built in accordance with the accepted theory of railroad construction for the running of trains at a high rate of speed; the witnesses all testifying that upon a three degree curve there should be an elevation of the outer rail of from two and a half to three inches in order to make the track safe for such speed. Appel-

lant's experts testified that it was not practicable to make such elevations in the tracks in the yards and it could not be done when a switch or other track was required to lead out from it at a different curvature on the curve. From the whole testimony we do not think there was sufficient evidence of negligence in the construction and maintenance of the track and road bed to have warranted the verdict.

The railroad company only owes to its employees the duty to use reasonable and ordinary care and diligence in the construction and maintenance of its tracks and bridges for the use and purposes for which they are constructed and which must be reasonably sufficient for the purposes intended. *St. Louis & S. F. Rd. Co.* v. *Hill,* 79 Ark. 76, and cases cited.

The road has been in operation for thirty years and trains of every kind and class crossing this particular track for that time without accident. It was shown to have been constructed by a capable engineer and inspected daily by the section foreman and frequently by the road master and others. This evidence conclusively shows that appellant had amply discharged its duty of ordinary care to the deceased and its other employees in the construction and maintenance of its track and road bed. *Tuttle* v. *Minn. R. R. Co.,* 122 U. S. 189; *Sou. Pac.* v. *Seley,* 152 U. S. 145; *C. M. & St. P.* v. *Riley,* 145 Fed. 137; *Sou. Pac.* v. *Gloyd,* 138 Fed. 388; *McCormick* v. *I. C. R. R.,* 100 Fed. 250; *Terre Haute Ry.* v. *Becker,* 146 Ind. 218; *Ry.* v. *Eubanks,* 48 Ark. 460; *Ry.* v. *Jaggerman,* 59 Ark. 98; *S. W. Tel. Co.* v. *Woughter,* 56 Ark. 212; *L. & N. Ry. Co.* v. *Bates,* 146 Ind. 572.

If, however, the jury believed the testimony relative to the speed of the train, as stated by some of appellee's witnesses, upon the track, as constructed, as they evidently did, we are not able to say that the evidence of negligence is insufficient to support the verdict. The rate of speed at which the train was going over the track, as constructed, appears to have been the question insisted upon for a recovery below. It was not complained that the

speed was excessive, but that the rate of speed over the track, as constructed was not reasonably safe for and was dangerous to the employees engaged in the operation of the train, and constituted negligence on the part of the company.

Boles, a civil engineer, was permitted to give an expert opinion upon his knowledge acquired from an examination of the track, and his information as to the distance the train ran before it stopped after it broke in two and the air brakes were automatically adjusted, upon the rate of speed at which it was going, and stated that it must have been running at twenty miles or more an hour, which was a dangerous rate for operation along that kind of a track. It is insisted that this testimony was incompetent, said witness not having been shown to ever have had any experience in the stopping of trains under the conditions mentioned, and that it was prejudicial as tending to corroborate the testimony of the two women about the speed of the train and contradict all the others as to its speed and its having stopped at the crossing, and which this witness said it could not have done and acquired the speed at which it must have been going, considering the statements of the witnesses as to the distance it ran after the car was derailed and the train broke in two.

It does not require the knowledge of an expert to determine the rate of speed at which a train is moving and any person of ordinary understanding and common observation seeing it in motion is competent to speak upon that question. *Bowen* v. *State,* 100 Ark. 236. Such being the case, however, does not preclude an expert who has particular skill and possession of professional knowledge acquired from the study and operation of trains from giving an expert opinion as to the speed at which a train was going, based upon the facts shown to exist at the time of its derailment, the grade of the road bed, the weight of the train, the point at which it broke in two and the air brakes became automatically adjusted, and the distance the engine and cars attached ran from the point of

the break and the adjustment of the brakes until it stopped.

This witness testified that he had had experience as an engineer in the construction of railroads; that he was the chief engineer for the Fort Smith Light & Traction Company, in the construction of its street railway system in the city of Fort Smith, that he had studied the conditions relative to the starting, moving and stopping of trains in order to qualify himself to build and construct tracks and roadbeds, upon which they should be operated; that in doing so, he had discussed the conditions under which trains could be stopped and the manner of doing so and all things that would have a bearing upon such questions, with men skilled in their operation, engineers, who actually operated the trains and moved and brought them to a standstill. Under the circumstances, we can not say that his training was not such as qualified him to answer the hypothetical questions relative to the speed of the train.

It is also insisted that the court erred in permitting the expert witnesses to answer hypothetical questions relative to the proper construction of the main track upon the curve without taking into consideration the undisputed fact that a switch track led off from the main line at a different curvature near the bridge. It is true this Court has held that hypothetical questions upon which opinions of expert witnesses are taken must include all the material undisputed facts, and may include any of the other facts which either party may regard the evidence tends to establish. *Ford* v. *Ford,* 100 Ark. 518, 140 S. W. 995. These experts, however, were not answering hypothetical questions which failed to include the switch track construction, but gave their opinions upon conditions that they found reflected and to exist at the time of the accident from an examination of the place thereof after the occurrence, and it can not be said that they did not take into consideration the switch track as constructed since it was upon the ground at the time of their examination. It was proper to permit the expression of their opinions under the circumstances and appel-

lant could have tested their knowledge of the existing conditions and discovered whether this fact was taken into consideration by them in forming their opinions if it had desired to do so, upon proper cross examination. *Ringlehaupt* v. *Young,* 55 Ark. 133.

The next contention is that the court erred in permitting the administratrix to testify as to the contributions to the support of herself and child received from said deceased husband.  Our Constitution provides, ''That in actions by or against administrators, executors, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement of the testator, parent, or ward, unless called to testify thereto by the opposite party.''   Schedule section 2, Constitution 1874.   This suit was brought under the Employer's Liability Act and can not be maintained, except when brought by an administrator.   35 Statutes at Large, 65, Chap. 1, 49. *American Railroad Company* v. *Birch,* 224 U. S. 547.

The recovery in this case, however, is for the benefit of the surviving widow and the minor heir, and the estate of the deceased person has no interest whatever in the recovery.   The amount recovered can not be administered by the probate court in any other way than by an order for its payment to the party interested, or their guardian.   The recovery is by the administrator, as a trustee, really, she being but a formal party. *Conner* v. *N. Y. N. H. & H. Ry. Co.,* 28 R. I. 560; 13 Am. & Eng. Ann. Cases, 1033.   Since the estate can not be charged in this suit and has no interest whatever in the recovery, our Constitution does not contemplate that the widow if she be the administratrix, shall not be allowed to testify concerning the contributions made to her by her husband before his death for the support of. herself and her minor child.   Such contributions can not be regarded as transactions with the deceased within the meaning of said Constitutional provision that would bar her from testifying thereto because of the fact that she is the formal

party to the suit as required by said Act of Congress, but in fact and effect only a trustee for the particular purpose of bringing the suit and not as administrator, within the usual sense in which it is employed in our statutes and by our Constitution.

Instructions numbered 13 and 14 were merely cautionary, and, conceding that they stated a correct rule of evidence on the subject, it does not appear that any prejudice could have resulted from the failure to give them. The expert witnesses testified, themselves, to the facts upon which they severally based their opinions, and if the jury did not accept as true the facts as thus related, they necessarily rejected the opinion of the same witnesses based on the statement of facts. It would have added little for the court to caution the jury that if they rejected the statements of facts made by the witnesses they should also reject the opinions based thereon. That is, practically, the substance of the instructions as applied to the circumstances of this case, and we think there is no likelihood that any prejudice resulted from the court's failure to give those instructions, if conceded to be correct. If the opinions given by the experts had been based entirely on hypothetical questions, then probably some such cautionary instructions would have been necessary.

We do not regard it necessary to discuss the other numerous assignments of error, and it will suffice to say that after a careful examination of the entire record, we have come to the conclusion that the testimony is sufficient to support the verdict of the jury that there was negligence upon the part of the appellant in the operation of its trains over the track, as constructed, at the rate of speed the jury might have found it was going at the time of the accident. Nor was it error to refuse to instruct the jury that the evidence would not sustain a finding that there was negligence in the construction and maintenance of the road bed and tracks, since the real question submitted was whether or not there was negligence of the company in the operation of the train at the unus-

ual and dangerous rate of speed, at which it was going, the track, as constructed, being considered.

Finding no prejudicial error in the record, the judgment is affirmed.