ROBB *v.* WOOSLEY.

Opinion delivered May 30, 1927.

1. MASTER AND SERVANT—LIABILITY FOR EMPLOYEES' ACT—INSTRUCTION.—In an action against the owner of a farm and his manager for the death of a tenant and son, alleged to have been shot by the manager during or after an altercation which arose over the manager's attempt to cut hay, an instruction that, if the manager, returning with a gun, did not renew the effort to cut hay and engaged with the tenants in a new encounter, the owner would not be liable *held* not erroneous as assuming the abandonment of the contest as to the right of possession of the hay field.

2. TRIAL—REPETITION OF INSTRUCTIONS.—The trial court is not required to duplicate or repeat instructions.

3. TRIAL—ARGUMENTATIVE INSTRUCTION.—In an action against the owner and manager of a farm for the wrongful death of a tenant and son, alleged to have been shot during an altercation concerning the cutting of hay, an instruction that if the man-

ager at the time of the killing had ceased to pursue his employ-
ment for the owner, the latter would not be liable unless he aided
or encouraged the commission of the homicide, held not erroneous
as argumentative.

4. MASTER AND SERVANT—LIABILITY FOR ACTS OF EMPLOYEE—JURY
QUESTION.—In an action for the death of a tenant and son against
a farm manager, who killed them, and the owner of the farm,
whether the manager had ceased to pursue his employment at
the time of the killing held for the jury.

5. WITNESSES—CONVERSATIONS WITH DECEDENTS.—In an action for a
wrongful killing, testimony of defendants as to conversations and
transactions had with decedents was admissible where the estates
of decedents were not involved; otherwise if their estates are
involved.

6. TRIAL—GENERAL OBJECTION TO TESTIMONY.—In a consolidated suit
for a wrongful killing brought for the widow and next of kin, and
on behalf of the estate of decedents, admission of testimony of
defendants as to conversations and transactions with decedents
over general objection held not error, where no restriction or lim-
itation of the testimony to cases brought for benefit of the widow
and next of kin was asked.

7. TRIAL—CONSOLIDATED SUITS—RESTRICTION OF TESTIMONY.—On the
trial of two consolidated suits, evidence admissible in one of the
suits but not in the other should, on request, be restricted to the
suit in which it is admissible.

Appeal from Greene Circuit Court, First Division;
W. W. Bandy, Judge; affirmed.

Gautney & Dudley and M. P. Huddleston, for appel-
lant.

Block & Kirsch, for appellee.

HUMPHREYS, J. Two suits were brought to the
October, 1925, term of the circuit court of Greene County,
First Division, by the administrator of the estates of
S. E. Piety and Noble Piety against appellees to recover
damages for shooting and killing the Pietys. S. E.
Piety was killed instantly, and suit was brought for the
benefit of his widow and next of kin under § 1075 of Craw-
ford & Moses' Digest. Noble Piety lived for an hour
after he was shot, and suit was brought for the widow
and next of kin under § 1075 of Crawford & Moses' Digest
and for the benefit of his estate under § 1070 of Crawford
& Moses' Digest. Woosley was joined as a defendant,

on the theory that, at the time the shooting occurred, Stepp was engaged in cutting hay for him, and that the killing of the Pietys occurred while he was acting for Woosley as his servant and employee in attempting to cut the hay. The suits were tried together, resulting in a judgment in each case for appellee, H. W. Woosley, and a judgment against Stepp in favor of appellant for $300 for Noble Piety's estate and a judgment in favor of appellant for $1,000 for the benefit of the widow and next of kin of S. E. Piety, from which appellant has prosecuted an appeal to this court.

W. W. Stepp was the manager of a farm in Greene County owned by H. W. Woosley, upon which S. E. Piety resided as a tenant, with his wife and four children, Noble being twenty-one years of age, and the oldest child. S. E. Piety had about one hundred acres of the farm rented, and claimed to have rented the meadow or hay-field on the place known as the Collins hayfield. Woosley and Stepp claimed that Piety had not rented the Collins hayfield and was not entitled to cut the grass on same. Stepp, as manager and employee of Woosley, attempted to cut the hay with a team and mower, and, after he had made three rounds, S. E. Piety and his son, Noble, came to the field and protested against Stepp cutting the hay. A fight ensued between Stepp and S. E. Piety, each knocking the other down, after which Stepp hastily retreated to the house occupied by Mrs. James F. Sanders, in a woods-lot near the hay-field. Stepp was boarding there. After he left the Pietys they unhitched the team and drove it into the woods-lot and tied the horses. Stepp procured a single-barrel shotgun and went to the place where the Pietys had tied or were tying the horses. Mrs. S. E. Piety testified that Stepp was gone only a short time, and, when he came back, he started around the horses toward Mr. Piety, at which time Noble stepped out and begged him not to shoot his father, whereupon he shot the boy; that, when he shot the boy, Piety ran toward Stepp, who started back toward the house, working with the gun all of the time, and, when

they got up towards the woods, Stepp turned toward Piety, who then turned to run, and shot him in the back, and, as quick as he could reload the gun, shot him again in the shoulder; that, after going to the house again, he returned and got the team.

W. W. Stepp testified that S. E. Piety ordered him out of the hay field, and, while discussing the matter, struck him; that he got up and backed away, Stepp following; that he got an opportunity to knock Piety down; that, when Piety got up, he reached back and got the hoe out of Noble's hand, whereupon witness ran across the cotton patch and jumped a fence; that S. E. Piety struck at him a time or two with the hoe, and he ran on to the house; that he looked back and saw the Pietys unhitch the team and drive it into the woods-lot; that they went back toward.the mower, so he decided to go get the team and come back home; that he procured a gun, and that when he got within one hundred feet of the team, he requested the Pietys to leave him alone, as he was going to get his team and go home; that the Pietys lined up, S. E. Piety in front, Noble in the center, and Mrs. Piety in the rear; that the father and mother advised Noble to cut witness in two; that, when witness reached for his lines, Noble struck at him with a hoe, at which time he shot Noble, and ran toward the house; that Piety followed, and, when close upon witness, he turned and shot Piety; that witness then got his team, and that he and his son went to town.

In the course of the trial Woosley was permitted, over the objection of appellant, to testify to transactions and conversations occurring between S. E. Piety and himself relative to the hay and hay field which Piety claimed to have rented. W. W. Stepp was permitted, over the objection of appellant, to testify relative to transactions and conversations had with both S. E. Piety and Noble Piety in reference to the hay field and the hay.

Appellant's first contention for a reversal of the judgment is that the court erred in giving instruction number 1, on its own motion, which is as follows:

"It is conceded that Stepp was in the employ of Woosley, and that he was acting for Woosley as his servant and employee in attempting to cut the hay. If you find, from a preponderance of the evidence, that, while attempting to cut the hay, Piety and his son, or either of them, claimed the hay land and attempted to resist Stepp or prevent him from cutting the hay, and that, as a result of this attempt to cut the hay and as a result of this renewal and in pursuance of his effort to cut the hay, shot and killed father and son, and that the shooting and killing of father and son was the direct result of the resistance or attempted resistance on the part of Piety and his son to prevent Stepp from cutting the hay or taking possession thereof, then your verdict will be for the plaintiff against the defendants Stepp and Woosley, unless you find that the killing was done in the necessary self-defense of Stepp; however, if you find from the proof in the case that, when Stepp returned with his gun, he did not renew his effort to cut the hay and was not engaged in cutting the hay, and that he and the Pietys entered into a new encounter, even though you may find that the new difficulty grew out of anger or ill will and hatred occasioned by the first difficulty, still your verdict should be for the defendant Woosley, and you will also find for the defendant Stepp if you find that he acted in his necessary self-defense."

Appellant assails the instruction upon the ground that it does not present the real issue to the jury. Appellant's theory of the case is that Stepp killed Piety while acting for Woosley as his servant and employee in attempting to cut the hay; while appellee's theory is that Stepp had abandoned his intention to cut the hay and was attempting only to remove his team from the scene of the action at the time he killed the Pietys. Appellant argues that the instruction assumes that there was an abandonment of the contest as to who had a right to the possession of the hay field, and a renewal.

We do not think the instruction susceptible to the interpretation placed upon it by appellant. We agree

with the construction placed upon it by appellees to the effect that it told the jury that, if Stepp shot and killed Piety while he was cutting the hay and as a part of the first encounter or a renewal thereof, both he and Woosley were liable; on the other hand, that, if he was not engaged in the cutting of the hay, which was the service for which he was employed, then Woosley was not liable. The instruction presents the real issue in the case to the jury for determination. Since the instruction presents both appellant's and appellees' theory to the jury for consideration, it was not error to refuse to give appellant's requested number 4, which covered his theory of the case. The trial court is not required to duplicate or repeat instructions.

Appellant's next contention for a reversal of the judgment is that the court refused instruction number 1, requested by him, defining the phrase "within the scope of his employment." The phrase was sufficiently defined in instructions numbers 8 and 10 given by the court.

Appellant's next contention for a reversal of the judgment is that the court erred in refusing to give his requested instruction number 3, which is as follows:

"You are instructed that the employer who puts his agent or employee in a place of trust or responsibility, or commits to him the management of his business, is responsible when the agent, acting within the scope of his authority, through lack of judgment or discretion, or under the influence of passion, inflicts an unjustifiable injury upon another, even though he go beyond the strict line of his duty or authority."

This instruction is fully covered by instructions numbers 6, 9 and 10 given by the court.

Appellant's next contention for a reversal of the judgment is that the court erred in giving instruction number 8, which is as follows:

"You are instructed that no particular time is required in which a servant may cease to be in the employ of his master, and in this case, even though you may

find that the time intervening between the first difficulty and the killing was short, yet, if you further find that Stepp, at the time of the killing, had ceased to pursue his employment for Woosley, then the defendant Woosley would not be liable, and your verdict will be for him, even though you may find that the killing was not in Stepp's necessary self-defense, unless you further find that the defendant Woosley advised, encouraged, aided and abetted Stepp in said killing.''

It is suggested by appellant that the instruction is erroneous, (a) because it is argumentative, (b) it left to the jury the determination of the question as to whether Stepp had ceased to pursue his employment for Woosley. We do not think the objections are tenable.

We have examined the objections made by appellant to the other instructions, and find no reversible error in them.

Appellant's last contention for a reversal of the judgment is that the court erred in admitting the testimony of both Woosley and Stepp as to conversations between them and transactions had by each of them with each of the decedents, S. E. Piety and Noble Piety. The record reflects that Woosley had no transactions or conversations with reference to the hay field with Noble Piety, but only with S. E. Piety. It shows, however, that Stepp had conversations and transactions with both in reference thereto. Two of the consolidated cases were suits by the administrator for the benefit of the widow and next of kin in which neither of the estates were interested. Under the principle announced by this court in the case of *St. L. & S. F. Rd. Co.* v. *Fithian*, 106 Ark. 491, 155 S. W. 88, the testimony was admissible in the consolidated suits for the benefit of the widow and next of kin. The third suit consolidated with these two was for the benefit of the Noble Piety estate. The testimony of the witnesses was not admissible, in so far as it might affect the result in the suit on behalf of Noble Piety's estate, but a general objection only was made to the admission of the testimony. Appellant did not request the court to restrict

or limit the testimony to the two cases in which it was admissible. Had such request been made, it would have been the duty of the court, upon the admission of the testimony, to restrict its application to the two cases brought on behalf of the widow and next of kin. *Bush v. Brewer,* 136 Ark. 246, 206 S. W. 322; *Little Rock Gas & Fuel Co.* v. *Coppedge,* 116 Ark. 334, 172 S. W. 885.

No error appearing, the judgment is affirmed.